UNITED STATES of America, Appellee,

v.

Ricardo FERRERA,
Defendant, Appellant.

No. 82–1255.

United States Court of Appeals,
First Circuit.

Argued June 6, 1984.

Decided Sept. 28, 1984.

As Amended Oct. 11, 1984.

Thomas E. Peisch, Boston, Mass., with whom Burns & Levinson, Boston, Mass., was on brief, for defendant, appellant.

Thomas J. Drinan, Asst. U.S. Atty., Boston, Mass., with whom William F. Weld, U.S. Atty., Boston, Mass., was on brief, for appellee.

Before COFFIN, Circuit Judge, STEWART,* Associate Justice (Retired), and BREYER, Circuit Judge.

BREYER, Circuit Judge.

The government charged defendant Ferrera with two counts of transporting in interstate commerce several thousand dollars worth of checks that he had obtained through fraud. *See* 18 U.S.C. § 2314. Essentially, it sought to prove that Ferrera deliberately gave to Larry Hector, a Canadian grain grower and broker, the impression that Ferrera was well connected with Conasupo, the Mexican government's grain buying department, and that Conasupo had placed a firm order through Ferrera for the purchase of about $1.5 million worth of Canadian grain from Hector's company. These impressions—which the government sought to prove false—led Hector to give Ferrera money, including several checks that Ferrera transported from Canada to the United States, where he deposited them in a bank account and successfully drew against some of them before Hector stopped payment. The jury found Ferrera

* Of the Supreme Court of the United States, sitting by designation.

guilty on both counts. The court sentenced him to two years in jail followed by two years probation conditioned upon his making "restitution in the amount of $32,-577.98." Ferrera appeals, attacking both the validity of his conviction and the lawfulness of the restitution order. We find that with the exception of one aspect of his challenge to the restitution order, Ferrera's appeal is without merit.

I

■ a. Ferrera claims that the government's case against him was so weak that the district court should have directed a verdict in his favor. Viewing the evidence in the light most favorable to the government, however, see, e.g., United States v. Drape, 668 F.2d 22, 25 (1st Cir.1982); United States v. Murray, 621 F.2d 1163, 1166 (1st Cir.), cert. denied, 449 U.S. 837, 101 S.Ct. 112, 66 L.Ed.2d 44 (1980), we find the evidence more than sufficient for conviction.

The applicable statute punishes one who transports in interstate or foreign commerce any ... securities or money, of the value of $5000 or more, knowing the same to have been ... taken by fraud ....

18 U.S.C. § 2314. The only seriously disputed question at trial concerned fraud. The government, in the indictment and bill of particulars, charged that this fraud consisted, in part, of Ferrera's falsely leading the victim Hector to believe (1) that Ferrera was authorized to enter into grain contracts on behalf of Conasupo, and (2) that a telex purporting to confirm an order for Hector's grain came from Conasupo.

The evidence establishing the alleged fraud consisted largely of Hector's testimony. He described, among other things, how Ferrera gave the impression that he was an important international grain dealer, who dealt regularly with Conasupo and who could arrange for a large Conasupo purchase of Hector's grain. When the telex arrived, Ferrera (according to Hector's testimony) kept jumping up and down, telling Hector he was rich and ordering drinks.

The telex said in part, "accept this as a firm order from Conasupo." (See Appendix) Ferrera then convinced Hector to give him several checks covering Ferrera's "commission."

Ferrera now points out that the telex, if read closely, says it comes from Eagle Grain (Ferrera's firm), not from Conasupo. But the jury might well have believed on the basis of Hector's testimony that Hector overlooked this fine point, and that Ferrera intended him to overlook it. Alternatively, viewing the matter more favorably for Ferrera, the jury might have thought Ferrera was trying to get Hector to believe (on the basis of the telex) that Conasupo had placed a firm order, not that the telex was the firm order. But this distinction is not sufficient to save Ferrera; for, any deviation from the bill of particulars arising from this distinction is slight and not sufficiently prejudicial to warrant reversal. See, e.g., United States v. Flaherty, 668 F.2d 566, 582 (1st Cir.1981) (concerning variance from indictment); United States v. Francisco, 575 F.2d 815, 818–19 (10th Cir. 1978) (concerning variance from bill of particulars).

■ b. The prosecutor, in his opening statement, said that, after Hector received the telex, Ferrera told Hector they would enter other commodity deals together; that Ferrera suggested they merge their companies; and that Ferrera gave Hector $200,-000 in promissory notes as a step towards merger. The government, however, introduced no evidence in respect to the $200,-000 notes, and Ferrera now claims that the prosecutor's reference to the notes requires a new trial. Ferrera's counsel did not object to the opening statement at the time, nor did he seek a curative instruction or other relief at any point during the trial. He now claims, however, that the reference to the notes followed by the failure to introduce any supporting evidence was "plain error." See Fed.R.Crim.P. 52(b).

Our reading of the record convinces us that the prosecutor's statement prejudiced Ferrera very little, if at all. The conduct in

question—providing Hector with $200,000 in promissory notes—is not itself blameworthy. *Cf. United States v. Steinkoetter*, 593 F.2d 747 (6th Cir.1979) (per curiam) (prejudice from references in opening statement to series of fatal bombings unconnected to crime charged and not subject of any subsequent evidence). And, in context, the giving of the notes was mentioned as but one more piece of cumulative evidence suggesting Ferrera was trying to gain Hector's confidence by passing himself off as a big-time international commodities dealer. The district court cautioned the jury not to take counsels' statements as evidence. Had the court been asked for an additional cautionary instruction at the close of the trial, it might well have issued it. And a cautionary instruction would have sufficed, in this situation, to cure any possible harm. The prosecutor's behavior here was a far cry from the conduct at issue in cases where new trials have been granted. *See, e.g., Stumbo v. Seabold*, 704 F.2d 910, 911 (6th Cir.1983) (multiple "egregious acts of prosecutorial misconduct," relating to questioning of witnesses, use of inflammatory language, and impermissible closing arguments); *United States v. Corona*, 551 F.2d 1386, 1391 (5th Cir.1977) (prosecutor in closing statement "singlehandedly violated each" of ABA's standards for prosecution jury arguments); *cf. United States v. DeVincent*, 632 F.2d 147, 153 (1st Cir.1980) (conviction upheld where opening statement did not "poison the minds of the jury"); *Government of Virgin Islands v. Turner*, 409 F.2d 102, 103–04 (3rd Cir.1968) (similar). We find no "plain error."

■ c. Hector testified that, in addition to the checks that Ferrera transported from Canada to Massachusetts, he gave Ferrera $18,000 as a 'loan'—a loan he apparently made because he expected that Ferrera would become 'entitled' to at least $18,000 in future commissions on sales Hector expected to make with Ferrera's help. In his closing argument, the prosecutor said,

If you have any doubt about that, consider the letter in evidence written by Ricardo [Ferrera]: "Yes, I will get you the $18,000 back." Quite clear it was a loan.

The letter from which he quoted was not in evidence. And Ferrera claims the prosecutor's statement warrants a new trial.

We have previously held, however, that

[a]rguing evidence not presented is harmless error, ... if the judge, on objection, instructs the jury that closing arguments are not evidence and that the jury's recollections control, and if the absent evidence does not weigh heavily on the other evidence in the case.

*United States v. Flaherty*, 668 F.2d at 595. In this instance, the prosecutor corrected himself immediately, and the district judge gave an appropriate curative instruction. The misstatement was not critical; the $18,000 was not a central matter; the payments at issue in the case were the other, transported checks. Moreover, the existence of the $18,000 'loan' was suggested by other evidence, namely Hector's uncontradicted testimony, and whether or not the funds were intended as a loan—the issue to which the absent letter related—was of limited relevance, at best. In addition, the prosecutor's misstatement appears accidental, not deliberate. The cases Ferrera cites involve more seriously prejudicial misstatements or more egregious prosecutorial behavior than are involved here. *See United States v. Brainard*, 690 F.2d 1117, 1122 (4th Cir.1982) (prosecutor transforms defendant's innocent testimony into "unequivocal inculpatory statements with respect to the only disputed issue in the case"); *United States v. Fearns*, 501 F.2d 486 (7th Cir.1974) (prosecutor in closing argument buttresses key witness's credibility by knowingly and repeatedly discussing her prior consistent statements that were not introduced into evidence); *United States v. Guajardo-Melendez*, 401 F.2d 35, 39–40 (7th Cir.1968) (prosecutor mistakenly attributes to witness remarks directly undercutting defendant's central defense). Following *Flaherty*, we conclude a new trial is not required.

■ d. Ferrera claims it was error for the judge to admit evidence (1) that Hector paid Ferrera's living expenses on his trips to Canada, (2) that Hector provided him the $18,000 loan, and (3) that Ferrera falsely told a bank teller, when depositing Hector's checks, that they were written not in Canadian, but in (more valuable) United States dollars. Ferrera points to Fed.R.Evid. 404(b), which forbids admission of evidence "of other crimes, wrongs, or acts ... to prove the character of a person," though it allows such evidence for other purposes.

None of the challenged items of evidence violates Rule 404(b), for none was offered to prove "character." Hector's payment of Ferrera's living expenses helped show the extent to which Ferrera had insinuated himself into Hector's confidence, as did the $18,000 loan. And the fact that Ferrera would tell an obvious lie to the bank teller suggests that his object was to get as much cash as quickly as possible, not to enter into a legitimate, longterm partnership with Hector. Of course, these bits of evidence might *also* have suggested a bad character. But the job of balancing this type of prejudice against relevance is for the district court, not this court. *See, e.g., United States v. Zeuli,* 725 F.2d 813, 816 (1st Cir.1984); *United States v. Eatherton,* 519 F.2d 603, 611 (1st Cir.), *cert. denied,* 423 U.S. 987, 96 S.Ct. 396, 46 L.Ed.2d 304 (1975). We see no abuse here of that court's balancing powers.

e. Ferrera claims that the district court should have allowed him to take the deposition by telephone of a business associate, Jaime Odriozola, who was in Mexico City at the time of trial. Ferrera told the district court that Odriozola worked with him as an agent of Eagle Grain, that he had taken a new job with the Mexican government, and that his new employer would not give him time off to come to Boston to testify. He said that Odriozola would testify

> that he was ... employed by Eagle Grain and the defendant; that on many occasions prior to the date of the telex, he had dealt with three officers of Conasupo, that he was authorized by them to enter into the negotiations with Hector, that Eagle Grain was a reg[i]stered representa[t]ive of Conasupo, that Eagle Grain, had in fact done another contract deal for purchase of wheat with Conasupo, and to a variety of other facts ....

The court denied the motion for the telephone deposition.

■ The decision about whether or not to allow the deposition rests primarily in the hands of the district court. *See, e.g., United States v. Mann,* 590 F.2d 361, 365 (1st Cir.1978). And, in light of the policy favoring live testimony in criminal prosecutions, a request for a deposition is only to be granted when "due to exceptional circumstances of the case it is in the interest of justice" to do so. Fed.R.Crim.P. 15(a). Ferrera points to several factors here favoring allowance. He notes that Odriozola, as Ferrera's business associate, was aware of the basic facts. Odriozola's proffered testimony tended to refute that of the Conasupo official who testified at trial that Conasupo's records showed no reference to Ferrera or to Eagle Grain through 1979 (the year in question) and that, although Eagle Grain had offered to sell Conasupo certain commodities during 1980, it had never fully qualified as an "official" firm entitled to do so. These allegations bear quite directly on the question of whether Ferrera's representations to Hector were or were not fraudulent.

On the other hand, other factors militated against allowing the telephonic deposition. The offer of proof is not sufficiently specific to determine the extent to which it rebuts the government's case. *See United States v. Bello,* 532 F.2d 422 (5th Cir.1976). Nor can one readily determine whether Odriozola could provide evidence, say, that Eagle Grain was a qualified Conasupo representative, without relying upon inadmissible hearsay. And the offer avoids the single most important item with which Odriozola should be familiar, namely the telex reporting Conasupo's "firm offer." The attorneys would likely have found it difficult to question Odriozola over the phone about this piece of paper. Finally,

the offer does not explain why a telephone deposition should be taken, instead of an ordinary deposition at the American Embassy in Mexico City. We are unaware of any case where such a procedure has been employed in a criminal deposition. *Cf.* Fed. R.Civ.P. 30(b)(7) (authorizing telephonic depositions in civil discovery upon consent of parties or order of court). And, in the absence of a strong showing of the necessity of such a procedure, we have serious doubts about the use of a method which so thoroughly insulates the witness not only from the court and jury, but even from his interlocutors. Given the practical and legal difficulties inherent in telephone depositions, the somewhat tangential focus and generalized character of the offer of proof, and the failure to explain why more traditional methods could not be used, we see no abuse by the district court of its power to deny the deposition request.

## II

Ferrera also attacks the lawfulness of the district court's restitution order. To follow his arguments, one must first understand the specific charges in the indictment. Count one charged Ferrera with having obtained and transported three checks as a result of his fraud. The checks were all dated February 23, 1979, and they were made out for $12,350, $20,000, and $10,000 respectively. The evidence at trial showed that Ferrera took these three checks from Canada to Boston, where he deposited them with a Boston bank. Count two of the indictment charged Ferrera with having obtained and transported a different check, a check dated March 1979, in the amount of $10,000. Ferrera deposited this check in the same bank account.

In February and March 1979 Ferrera wrote checks against this account that totalled in excess of $30,000. But his efforts gained him substantially less than the $52,-350 (Canadian dollar) face value of the checks covered by the indictment. Hector stopped payment on the checks, and the bank, which had honored a number of checks drawn against the account before

learning of the stopped payment, was able to cover some of Ferrera's charges from other funds he had on deposit. But the bank ended up $14,577.98 out of pocket. Hector also lost money, but not through these particular checks. He lost the $18,-000 which he had given Ferrera as a 'loan.' And his business was also injured.

The district court sentenced Ferrera to two years in prison on each of the two counts charged. The court then suspended the prison term on count two, placing Ferrera on probation subject to the "special condition" that the "defendant make restitution in the amount of $32,577.98 ...." This sum represents the $14,577.98 that the bank lost plus the amount of Hector's $18,-000 loan.

■ The statutory provisions for restitution have recently been amended to provide district courts with broad powers to make victims whole. Victim and Witness Protection Act of 1982, Pub.L. No. 97–291, § 5(a), 96 Stat. 1248, 1253–55, *codified at* 18 U.S.C. §§ 3579–80; *see* Project, *Congress Opens a Pandora's Box—The Restitution Provisions of the Victim and Witness Protection Act of 1982*, 52 Fordham L.Rev. 507 (1984). But, for offenses occurring, like these, before 1983, the court's power was governed by 18 U.S.C. § 3651, which allows the court, as a special condition of probation, to require a defendant to make restitution "to aggrieved parties for actual damages or loss caused by the offense for which conviction was had ...." Ferrera argues that the 'losses' for which the district court ordered restitution were not "caused by the offense for which conviction was had."

■ 1. Ferrera's basic claim is that the $18,000 loss was not "caused" by the offenses charged, namely the transportation of the four checks obtained through fraud. Because the loan was not specified in the indictment and his conviction did not encompass it, Ferrera argues that restitution for the amount of the loan cannot be ordered pursuant to 18 U.S.C. § 3651.

This panel is not of one mind on the issue of whether § 3651 permits the restitution of a loss which is not specified in the indictment or bill of particulars and for which there has been no conviction or plea. Two of us are disposed to think that § 3651 can be interpreted to permit such restitution in certain cases, while one of us thinks that it cannot be so interpreted.

We see no reason to discuss our differing views in this instance, however, because we foresee little or no resort to § 3651 in the future, it having been effectively superceded in most cases by the broader restitution provision of the Victim and Witness Protection Act of 1982, 18 U.S.C. § 3579. More importantly, under either interpretation of § 3651, restitution of the $18,000 loan is simply not supported by the record in this case.

Looking to the record, we find that there was no orderly consideration and determination of either the causation or existence of the loan in question. No cancelled checks, checkstubs, or other written evidence of the $18,000 payment were introduced at trial. Hector's testimony alone sought to prove the existence of the $18,000 payment and its relation to the fraud. That testimony was confused, at least in respect to the relation between the fraud and the payment. As far as we can make out, the $18,000 might have been some sort of advance to Ferrera in connection with the sale or it might have been a loan anticipating certain future commissions. The prosecuting attorney referred to a letter in which Ferrera admitted that he owed Hector $18,000, but that letter was not admitted into evidence (and the court gave a curative instruction).

The post-trial sentencing hearing did not cure these evidentiary deficiencies. Ferrera pointed out the government's failure to prove the $18,000 payment with documentary evidence, and he noted its failure to show the causal connection with reasonably clear evidence. The government provided no additional evidence; nor did it introduce the letter containing the "admission." The trial court, while ordering the restitution, made no specific factual finding. Rather, it referred to Hector's testimony about the

$18,000 and said, "The jury believed him." Ferrera's conviction, however, does not show that the jury believed Hector in respect to the $18,000. In fact, the trial court, in its charge, did not refer to the $18,000 payment. We therefore conclude that under the specific factual circumstances of this case, the requisite "causal connection" was not shown and restitution of the $18,000 cannot be ordered.

The proper course now seems to us to be simply to modify the restitution order by reducing it by $18,000. This is not the typical case where, on the vacation of a sentence by an appellate court, the matter is remanded to the trial court for exercise of its discretion in resentencing. A prison term and an additional term with sentence suspended conditioned on restitution have been ordered. We merely are reducing the amount of the restitution, because of the reasoning we have stated. There is no indication here that such a reduction would lead the district court to increase any other part of the sentence.

■ 2. Ferrera also argues that the offense charged in count two, the transportation of the $10,000 check, did not cause the bank's $14,577.98 loss. Rather, it was the transportation of the three checks involved in count one that caused this loss. Yet, the "restitution" is attached as a condition to probation imposed under count two, not count one. Given that the bank closed the accounts involved here very shortly after Ferrera's deposit of the count two check, Ferrera's factual contention may well be correct.

We need not consider, however, whether the restitution statute requires the segregation of remedies by counts of the indictment. The restitution award on behalf of the bank would have been entirely proper if probation and restitution had been ordered for Count 1, and imprisonment for Count 2. A remand simply for purposes of reversing the sentences imposed on the two counts is unnecessary, as the result would be identical. Any error which might be said to have occurred in this case, a question which we do not decide, was therefore harmless. We also note that this question should not arise

in the future, as 18 U.S.C. § 3579(a) (1982) now clearly permits imposition of restitution for any offense "in addition to ... any other penalty authorized by law."

*The restitution order is modified, reducing the amount of the restitution by $18,000, and, as so modified, the judgment of the district court is affirmed.*

### APPENDIX

The text of the telex discussed above is as follows:

AMJ ASSOC REG

TELEX 97 12580

ATTEN: CANADIAN TRITACALE LTD.

MR. LARRY HECTOR

CONFIRMING MR. FERRERA OFFER IN YOUR BEHALF. WE HERE BY CONFIRM OUR ORDER 001 FOR 11,000 MT OF TRITACALE WHEAT, AT 139.00 PER MT, FOB ORGION POINT. INLAND FREIGHT TO BE CONFIRMED BY CARRIER. DELIVERY TIME MINIMUM 120 DAYS FROM 2/22/79. ACCEPT THIS AS A FIRM ORDER FROM CONASUPO.

EAGLE GRAIN INTL, INC.

234–604 AVE REFIRNA

MEXICO, D.F.