UNITED STATES of America, Appellee,

v.

Bart FORZESE, Defendant, Appellant.

No. 84–1424.

United States Court of Appeals, First Circuit.

Argued Dec. 6, 1984.

Decided March 12, 1985.

Alan D. Rose, Boston, Mass., with whom Nutter, McClennen & Fish, Boston, Mass., was on brief for defendant, appellant.

Maurice R. Flynn, III, Asst. U.S. Atty., with whom William F. Weld, U.S. Atty., Boston, Mass., was on brief for appellee.

Before CAMPBELL, Chief Judge, BOWNES, Circuit Judge, and MALETZ,[*] Senior Judge.

MALETZ, Senior Judge.

Defendant-appellant Bart Forzese was indicted for nineteen counts of mail fraud, 18 U.S.C. § 1341 (1982), and aiding and abetting, *id.* § 2, and one count of conspiracy to commit mail fraud. *Id.* § 371. Seven substantive mail fraud counts and the conspiracy count were submitted to the jury, which returned guilty verdicts on all eight counts.

The district court sentenced Forzese to concurrent three-year prison terms on the substantive counts and to a suspended four-year prison term, plus five years probation, on the conspiracy count. As a condition of probation, Forzese was ordered to make restitution of $43,720.60 to seven persons who allegedly were victims of his fraudulent activities.

Forzese appealed from the judgment of conviction and the sentence. He contends that (1) the evidence presented was insufficient to support the convictions; (2) the district court erred in refusing to strike from the indictment overt acts as to which there was no evidence or that were not committed in furtherance of a conspiracy;

[*] Of the United States Court of International Trade, sitting by designation.

and (3) the restitution order lacked a sufficient factual foundation. We disagree with Forzese's first two contentions but agree with the third. Accordingly, the judgment of the district court is affirmed in part and vacated and remanded in part for further proceedings not inconsistent with this opinion.

## I. *Facts*

· Bart Forzese, who sold insurance for various companies, specialized in selling health insurance policies to elderly customers. The indictment charged that he entered a conspiracy with, among others, co-defendants William Burhoe, Vincent Lessard, and John Kay to use the mails "in furtherance and execution of a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises...."

Burhoe, Lessard, and Kay all pleaded guilty but did not testify against Forzese. Richard Keller, another insurance salesman who was an unindicted co-conspirator and who had been imprisoned for mail fraud, testified for the government. According to Keller, he, Forzese, and the co-defendants cooperated in continually switching, or "twisting," the health insurance coverage of their elderly customers from one company to another.

Twisting benefits an insurance · agent while damaging the customer. The agent benefits because the commission earned on the sale of a new health insurance policy is substantially higher than that earned on the renewal of an existing policy. The customer is harmed because he must satisfy a new "preexisting condition clause" with the start of each new policy. This clause requires the passage of a period of time—occasionally as long as two years—before the customer is covered for ailments that existed at the time the policy was sold. Given these circumstances, twisting increases the insurance agent's commissions while reducing—often to nothing—his customers' coverage.

Keller testified that some of the conspirators borrowed or stole money from the customers, but that to his knowledge Forzese did not do those things. Keller added that Forzese said he was unconcerned by a Massachusetts investigation of insurance sales "and he always claimed that he dotted his 'i's and crossed his 't's and they would never get him unless someone rolled over and testified against him."

The government called six witnesses who told of the frequent and repeated sales of health insurance policies to them by Forzese, Keller, Burhoe, Lessard, and Kay. They described how they dropped existing coverage in favor of new policies because the agents told them the new coverage was better for them.

The government also introduced evidence that an insurance company first cancelled policies issued to Forzese's customer Mary Robertson and later declined to issue coverage to her, because of "over-insurance." In this connection, the government elicited testimony tending to show that Forzese failed to refund a premium paid by Mrs. Robertson for the policy that was not issued. Finally, the government offered proof that Forzese, although he was not licensed to sell insurance in Maine, sold a policy to Charles Dube, a resident of that state, and obtained coverage by fraudulently using a Massachusetts address on Dube's application.

Forzese took the stand in his defense and denied involvement in twisting. He admitted, however, that he switched his customers to whatever new insurance company he represented, and had them drop their existing coverage in the process. He also acknowledged that his customers had been harmed but claimed that this was the result of the conduct of the other salesmen, of which he was unaware.

## II. *Sufficiency of the Evidence*

■ Forzese contends that the evidence adduced at trial was insufficient to support his convictions. To succeed in this argument, he must show that the evidence before the jury "and all the legitimate inferences drawn therefrom, viewed in the light most favorable to the government, were insufficient to demonstrate [his guilt] be-

yond a reasonable doubt...." *United States v. Smith*, 726 F.2d 852, 866 (1st Cir.1984) (en banc). *Accord, e.g., United States v. Hyson*, 721 F.2d 856, 860 (1st Cir.1983); *United States v. Fortes*, 619 F.2d 108, 122 (1st Cir.1980).

"The elements of the offense of mail fraud ... are (1) a scheme to defraud, and (2) the mailing of a letter, etc., for the purpose of executing the scheme." *Pereira v. United States*, 347 U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed. 435 (1954). *Cf. United States v. Maze*, 414 U.S. 395, 399, 94 S.Ct. 645, 647, 38 L.Ed.2d 603 (1974) (for statute to apply, mailings must be "sufficiently closely related to [defendant's] scheme").

There is no substantial dispute as to what Forzese and the other insurance agents did; the extensive documentary evidence introduced at trial depicts cancellations and sales of policies, payments of premiums by customers, and exchanges of funds among the insurance agents. At its core, Forzese's challenge to the sufficiency of the evidence rests on his argument that the government failed to prove wrongful intent. The jury could not analyze Forzese's activities in a vacuum. Instead, it had to consider whether these activities were, as Forzese characterized them, an innocent attempt by an honest businessman to make a living or, as Keller characterized them, part of a scheme to defraud. It is apparent that the jury believed Keller.

The substantive mail fraud counts submitted to the jury (all of which resulted in convictions) were as follows:

| Count | Customer |
| --- | --- |
| Count 1 | Mary Robertson |
| Count 5 | Charles Dube |
| Count 6 | Charles Dube |
| Count 9 | Florence Finn |
| Count 11 | Fred Blank |
| Count 13 | Henry Gates |
| Count 14 | Floyd Barbetti |

Counts 1, 9, 11, 13, and 14 concern the mailing of insurance policies sold to particular customers. Counts 5 and 6 were somewhat different from the others, in that the ultimate, if unintended, victim of the fraudulent scheme was an insurance company, which received an incorrect address for Charles Dube, rather than Mr. Dube himself. (Count 5 concerns the mailing of Dube's policy to Forzese, while count 6 concerns Forzese's mailing to the insurance company of a fraudulent letter, which said that Dube had moved from Massachusetts to Maine.)

 The jury heard evidence that Forzese and the other insurance agents sold Robertson, Finn, Blank, Gates, and Barbetti numerous policies. Inasmuch as the jury believed Keller and viewed these sales as twisting rather than as the legitimate business of insurance, the convictions on counts 1, 9, 11, 13, and 14 are amply justified, because any mailing of a policy for the purpose of twisting must have furthered a fraudulent scheme. *See United States v. Martin*, 694 F.2d 885, 889–90 (1st Cir.1982).

Forzese contends, however, that the convictions on counts 5 and 6 cannot stand, because they involve a fraud on the insurance company that was misled as to Dube's address, but not a fraud on Dube. He argues that any fraud on the insurance company was not linked to the fraudulent scheme alleged in the indictment.

But there is more to the Dube matter than Forzese suggests. For one thing, Forzese did not transmit the policy to Dube, because that would have alerted the customer to the falsification of his address and could have led to cancellation of the policy and loss of Forzese's commission. The evidence further indicates that Dube's sister, who tried to submit insurance claims for her brother while he was ill, learned of the existence of the policy only when she came across her brother's cancelled check.

 Thus, Forzese's letter to the insurance company, falsely indicating that Dube had moved from Massachusetts to Maine, was designed to cover up the previous fraud. Although the letter helped to bring about payment of Dube's insurance benefit, the jury was justified in finding that it remained "an integral part of appellant's ongoing scheme to defraud." *Id.* at

890. *Cf. United States v. Pisciotta,* 469 F.2d 329, 330–31 (10th Cir.1972) (submission of fraudulent applications for insurance coverage as part of scheme to defraud). The fraudulent scheme would have reached fruition and the insurance policy would have been rendered worthless but for the fortuitous discovery of the cancelled check—and the success or failure of the scheme is irrelevant to criminal liability under the statute. *See United States v. Contenti,* 735 F.2d 628, 632 (1st Cir.1984).

■■■ In light of our holding that the convictions on the substantive counts were supported by sufficient evidence, there is no merit to Forzese's contention that his conviction on the conspiracy count must be reversed because of insufficiency of evidence. Several of the overt acts submitted to the jury on the conspiracy count tracked the substantive counts that resulted in convictions, and it is settled law that to obtain a conviction for conspiracy the government need prove the commission of only one overt act in furtherance of the conspiracy. *See Braverman v. United States,* 317 U.S. 49, 53, 63 S.Ct. 99, 101, 87 L.Ed. 23 (1942); *United States v. Canas,* 595 F.2d 73, 79–80 (1st Cir.1979). *Cf. United States v. Morales,* 677 F.2d 1 (1st Cir.1982) (conspiracy conviction reversed because, in light of instructions given to jury, acquittal on substantive counts implied a finding that none of the alleged overt acts took place).

### III. *Overt Acts Submitted to Jury*

Forzese argues in the alternative that even if there was sufficient evidence to support a conspiracy conviction, that conviction must be reversed because the district court erred in submitting to the jury numerous overt acts as to which there was no evidence or that were not committed in furtherance of a conspiracy. After denying a defense motion to strike out these overt acts, the court offered the jury a cautionary instruction:

Now, there are a large number of overt acts recited in the conspiracy count. On many of those there has been no evidence. Of course, you could not use one of those alleged overt acts on which you have not heard any evidence. If you find that there was a conspiracy, in order to convict of conspiracy you would also have to find that [*sic*] performance of an overt act by someone involved in the conspiracy. But, of course, you could not predicate your finding upon an alleged act upon which there had been no evidence. You would have to find one overt act beyond a reasonable doubt with evidence to support the charge that that act had been performed by one of the persons involved in the conspiracy.

■ In response to Forzese's contention, the government first argues that there was no objection to the procedure followed by the district court, since defense counsel said to the court: "I bow to your wisdom on these matters, but I just feel a little bit uneasy." We are not so certain whether this simple courtesy was tantamount to acquiescence, but we need not decide the issue since the government is on firm ground when it cites the holding of *United States v. Sellers,* 603 F.2d 53, 56 (8th Cir. 1979), *vacated on other grounds,* 447 U.S. 932, 100 S.Ct. 3033, 65 L.Ed.2d 1127 (1980), that "if an alleged overt act has not been proved, its submission to the jury is harmless error when the jury is presented with other overt acts in furtherance of the conspiracy which were sufficiently supported by the evidence." *A fortiori, Sellers* applies here, since the court cautioned the jury not to consider those overt acts as to which evidence was not provided.

Therefore, Forzese's reliance on *United States v. Driscoll,* 449 F.2d 894 (1st Cir. 1971), *cert. denied,* 405 U.S. 920, 92 S.Ct. 948, 30 L.Ed.2d 790 (1972), is misplaced. In *Driscoll,* the court vacated a conspiracy conviction because it was faced with the possibility that the jury was not persuaded by those overt acts that could support conviction but relied instead on "an act directed towards obtaining a lawful result by a lawful means." *Id.* at 898. Moreover, the parties in *Driscoll* did not brief or argue the contention that defendant's conviction

on a substantive count provided a sufficient finding of an overt act to support a conspiracy conviction. *Id.* at 897 n. 3.

Neither of these infirmities obtains here. Although the better practice might have been to edit the conspiracy count before its submission to the jury, we can discern no prejudice to Forzese where there was ample evidence to support convictions on each substantive count submitted to the jury, where several overt acts in the conspiracy count tracked the substantive counts, and where the court cautioned the jury not to consider overt acts as to which there was no evidence. *Cf. United States v. Parker,* 586 F.2d 1253, 1257 (8th Cir.1978) (although it might have been better not to submit to the jury an indictment that included overt acts unsupported by evidence at trial, defendant was unable to demonstrate prejudice). Additionally, a reasonable jury could find, in light of Keller's testimony and contrary to Forzese's contention, that the overt acts for which proof was offered were committed in furtherance of a conspiracy.

## IV. *Restitution*

■ Forzese's final challenge is to the district court's order that, as a condition of probation, he pay $43,720.60 to seven victims of the fraudulent scheme who testified at trial. Under the Victim and Witness Protection Act of 1982, 18 U.S.C. §§ 3579–3580 (1982), the district courts have been given "broad powers to make victims whole." *United States v. Ferrera,* 746 F.2d 908, 913 (1st Cir.1984). But that statute and its restitution provisions apply only to offenses occurring after January 1, 1983. *Id.* Therefore, the district court's order of restitution necessarily rested on the authority of the probation statute, 18 U.S.C. § 3651 (1982), which provides that a defendant "[m]ay be required to make restitution or reparation to aggrieved parties for actual damages or loss caused by the offense for which conviction was had...."

The court arrived at the figure of $43,720.60 on the recommendation of the prosecutor, who asked that probation be conditioned upon Forzese making "restitution to the seven victims who testified at trial in this matter as listed in the list that I am going to file with the court now. The total amount of money involving those seven people is $43,720.60." The prosecutor did not itemize the figure, and the court adopted his recommendation without asking for or making specific computations.

The federal courts have taken seriously section 3651's requirement that restitution be made to "aggrieved parties" only for "actual damages or loss." "Any amount to be paid in restitution must be obtained by *accurate computation* and cannot exceed the amount of loss actually caused." *United States v. Lynch,* 699 F.2d 839, 845 (7th Cir.1982) (emphasis added). Discussing the statutory reference to "actual damages," the Ninth Circuit observed:

> The requirement is grounded on the need for proving with certainty the amount of the loss caused by the offense. The implication of these cases [previously cited] is that the amount of loss must be established by proof at trial, [citations omitted], some other judicial determination, [citations omitted], or some consensual means, [citations omitted].

*United States v. Gering,* 716 F.2d 615, 625 (9th Cir.1983). *Cf. United States v. McMichael,* 699 F.2d 193, 195 (4th Cir.1983) (restitution limited to damages caused by offense for which defendant was indicted and to amount that evidence proves was lost by aggrieved party); *United States v. Tiler,* 602 F.2d 30, 33 (2d Cir.1979) (same).

■ We recognize the distinct possibility that the $43,720.60 figure recommended by the government represents actual damages sustained by aggrieved parties as a result of the offenses for which Forzese was indicted and convicted. We are unable, however, to "ascertain what the district court relied on in arriving at [this] figure...." *United States v. Johnson,* 700 F.2d 699, 701 (11th Cir.1983) (per curiam). *See Ferrera,* 746 F.2d at 914 (amount of restitution reduced because district court's order lacked support in the record). *But cf. United States v. Lemire,* 720 F.2d 1327, 1354 (D.C.Cir.1983) (al-

though district court failed to provide rationale for amount of restitution ordered, record was sufficiently clear to demonstrate that order was properly within its discretion), *cert. denied,* —— U.S. ——, 104 S.Ct. 2678, 81 L.Ed.2d 874 (1984).

Since we cannot determine how the $43,720.60 figure was computed, the restitution order must be vacated. That portion of the sentence is remanded to the district court "to reconsider the propriety and amount of the restitution order, and to specify the bases for its determination." *Johnson,* 700 F.2d at 701.

### V. *Conclusion*

We have fully considered appellant's other arguments and find them to be without merit. Accordingly, the judgment of the district court is affirmed, except insofar as it directed Forzese to pay restitution in the amount of $43,720.60. The restitution order is vacated and remanded to the district court for further proceedings not inconsistent with this opinion.

*Affirmed in part and vacated and remanded in part.*