**UNITED STATES of America**

v.

**Gerald KRESS, Appellant.**

No. 91–1237.

United States Court of Appeals, Third Circuit.

Argued Aug. 15, 1991.

Decided Sept. 16, 1991.

Rehearing Denied Oct. 18, 1991.

Lee J. Dobkin (argued), Office of the U.S. Atty., Philadelphia, Pa., for appellee.

Brian P. Flaherty (argued), Wolf, Block, Schor & Solis–Cohen, Philadelphia, Pa., for appellant.

Before COWEN, NYGAARD and WEIS, Circuit Judges.

## OPINION OF THE COURT

COWEN, Circuit Judge.

The issue presented by this appeal is whether a district court may properly require a criminal defendant to pay post-judgment interest on restitution due the United States government as a condition of probation, when that interest accrues from the day of sentencing at a monthly rate of one-and-one-half percent. Because we hold that the Victim and Witness Protection Act (VWPA), 18 U.S.C. §§ 3663–64 (1988) (formerly 18 U.S.C. §§ 3579–80 (1982)), permits federal courts to order a defendant to pay post-judgment interest of this nature, we will affirm.

### I.

For his role in a scheme to defraud the United States Department of Defense, Gerald Kress was sentenced on March 14, 1989, to a prison term of 366 days followed by five years of probation.[1] In addition, the district court determined that Kress could afford to compensate the United States for losses it suffered as a result of his wrongdoing, and ordered Kress to pay the government $300,000.00 in restitution as a condition of his probation. The $300,000 was payable in sixty monthly installments, with payment to begin upon the commencement of his probation. Interest on the unpaid balance was to begin accruing immediately and was to be "computed at the rate of 1.5% per month as provided in 18 U.S.C. § 3565." App. at 46a. While the district court explained the basis for setting the interest rate at 18% annually, it did not specify the statutory authorization for requiring that interest be paid in the first place.

Kress thereafter appealed the judgment of conviction. He also filed on April 14, 1989, a Rule 35 motion to reduce or modify his sentence. Fed.R.Crim.P. 35.[2] At the center of Kress's motion was a request that the interest rate on the restitution be reduced to 10.43% annually, which corresponded to the rate of interest allowed on civil judgments at the time. 28 U.S.C. § 1961. On June 5, 1989, the district court vacated the 366 day prison term, substituting a four month term of imprisonment. The rest of the sentence, including the requirement of restitution and interest, was left unchanged. Following our affirmance of the Kress conviction, *United States v. Educational Development Network Corp.*, 884 F.2d 737 (3d Cir.1989), the United States Supreme Court denied certiorari on April 16, 1990.

Another Rule 35 motion was filed by Kress on April 19, 1990, which the district court subsequently denied. Kress then served his prison term and was released on October 2, 1990. After his release, Kress filed a Motion for Modification of Conditions of Probation under Rule 32.1(b). Building on the premise that he was given an illegal sentence, Kress requested that the sentencing order be clarified or modified to reflect that interest on the restitution payments did not start to accrue until

---

1. Kress, Educational Development Network Corp. ("EDN"), which is a corporation wholly owned by Kress, and Colonel Robert Allen Baxter were indicted on sixty-four counts of fraud in connection with a contract between EDN and the Department of Defense to provide an educational and employment training program to the Army National Guard Bureau. Kress was charged with thirteen counts of mail fraud, 18 U.S.C. § 1341, twenty counts of making false statements to a government agency, 18 U.S.C. § 1001, twenty-one counts of filing false claims, 18 U.S.C. § 287, and five counts of paying gratuities to a public official. 18 U.S.C. § 201(f). After two pre-trial motions were denied, Kress negotiated a plea agreement with the government. Pursuant to Fed.R.Crim.P. 11(a)(2), Kress entered a conditional plea of guilty to all counts against him, but expressly reserved his right to appeal the judgment of conviction as well as the district court's disposition of the two pre-trial motions he filed.

2. Offenses committed prior to November 1, 1987 are governed by the former version of Rule 35 which permitted the correction of an illegal sentence at any time. That provision was changed by amendment in 1986. Pub.L. 98–473, Title II, § 215(b), 98 Stat. 2015.

Kress's release from prison.[3] On March 12, 1991, the district court denied the motion, prompting Kress to file this appeal.

## II.

Subject matter jurisdiction over this matter was properly invoked pursuant to 18 U.S.C. § 3563(c) and Fed.R.Crim.P. 32.1(b). Our jurisdiction is predicated on 28 U.S.C. § 1291, 18 U.S.C. § 3742(a)(1), and Fed. R.Crim.P. 35(a).[4] Since the legality of the sentence imposed by the district court is being challenged, our review is plenary. *See United States v. Fredenburgh,* 602 F.2d 1143, 1148 (3d Cir.1979), *overruled on other grounds, United States v. Busic,* 639 F.2d 940 (3d Cir.1981).

This case presents several questions of first impression in our circuit. Initially, we must decide if a district court may properly order a criminal defendant to pay post-judgment interest on restitution owed to the victim of his crimes. Should we hold that it may, we must then determine if the interest can accrue from the date that the sentencing order is entered. We must also ascertain whether Kress, having failed to appeal from the district court's order of June 5, 1989, is now barred from relitigating the issue of the appropriate interest rate. Finally, we must decide if the interest requirement unconstitutionally burdens a defendant's right to appeal.

Before addressing these questions, we need to frame our analysis. The district court unfortunately did not point to any authority sanctioning the restitution portion of its sentencing order. Nevertheless, a pair of congressional acts clearly permitted it to order Kress to pay restitution to the government as a condition of probation.

The first of these is the Federal Probation Act (FPA), 18 U.S.C. § 3651,[5] which was repealed in 1984 but still applies to crimes committed before November 1, 1987. *See* Pub.L. 98–473, Title II, ch. II, § 212(a)(2), Oct. 12, 1984, 98 Stat.1987 (repealing 18 U.S.C. § 3651); Pub.L. 98–473, Title II, ch. II, § 235, Oct. 12, 1984, 98 Stat.1987 (providing for applicability of sentencing provisions to offenses committed before Nov. 1, 1987). Since Kress was sentenced for criminal activity which commenced in 1983, the FPA supports the district court's actions. Also applicable is the VWPA, which was enacted in 1982. The VWPA states that the "court, when sentencing a defendant under [Title 18], may order ... that the defendant make restitution to any victim of such offense." 18 U.S.C. § 3663(a)(1). We have held that defendants may be required under the VWPA to pay restitution to federal governmental bodies as a special condition of probation. *United States v. Hand,* 863 F.2d 1100 (3d Cir.1988).

Where the district court fails to specify whether the FPA or the VWPA authorized its actions, the general rule is that the VWPA controls. *See United States v. Miller,* 900 F.2d 919, 921–22 (6th Cir.1990); *United States v. Padgett,* 892 F.2d 445, 448 (6th Cir.1989) ("unless a clear intention appears to the contrary, we will assume restitution orders are made pursuant to the broader provisions of the VWPA"). *See also United States v. Spambanato,* 876 F.2d 5, 7 (2d Cir.1989) ("for crimes committed after January 1, 1983, ... restitution is to be awarded only pursuant to the VWPA"). This rule makes sense, given the broad provisions of the VWPA and the repeal of 18 U.S.C. § 3651.

---

3. The Motion states that the United States Attorney had demanded that Kress pay pre-probation interest totalling approximately $95,000.

4. This is ostensibly an appeal from the district court's denial of a Rule 32.1(b) motion. Rule 32.1(b) motions, though, are vehicles for modifying conditions of probation when changing circumstances warrant it, or when terms in the order are unclear. Kress's Rule 32.1(b) motion, on the other hand, directly challenged the legality of the sentencing order, and cannot be termed a Rule 32.1(b) motion. Instead we think

it is more properly titled a Rule 35(a) motion, and we will view it as such. *See United States v. Heubel,* 864 F.2d 1104, 1109 (3d Cir.1989) (holding in a *pro se* case that a motion denominated as a Rule 35(b) motion may be treated as a Rule 35(a) motion). Our jurisdiction, then, is based on Rule 35(a), not Rule 32.1(b).

5. The FPA provides, in relevant part, that "the defendant ... may be required to make restitution or reparation to aggrieved parties for actual damages or loss caused by the offense for which conviction was had." 18 U.S.C. § 3651.

*See United States v. Padgett,* 892 F.2d at 448; *United States v. Ferrera,* 746 F.2d 908, 914 (1st Cir.1984). Therefore, we hold that the VWPA, and not the FPA, governs this case, and we will analyze the issues accordingly.

### III.

■ Kress first argues that post-judgment interest on restitution payments can never be assessed under the VWPA. The VWPA itself is silent with respect to the payment of interest in connection with restitution. "However, the absence of a specific provision for interest in a statute does not necessarily 'manifest[ ] an unequivocal congressional purpose that the obligation shall not bear interest.'" *United States v. Sleight,* 808 F.2d 1012, 1019 (3d Cir.1987) (quoting *Rodgers v. United States,* 332 U.S. 371, 373, 68 S.Ct. 5, 7, 92 L.Ed. 3 (1947)). Rather, we are to "fashion the grant or denial of interest based on the congressional purpose in imposing the particular statutory obligation and in light of general relevant principles." *Id.* at 1019–20 (paraphrasing *Rodgers,* 332 U.S. at 373, 68 S.Ct. at 7). Thus, if it would serve the purpose behind the statute at issue, interest may be awarded. Utilizing this test, the Supreme Court has held that interest cannot be added to a fine or penalty the purpose of which is to deter prohibited conduct, since the government does not suffer a money loss if that fine or penalty is not paid immediately. *Rodgers,* 332 U.S. at 376, 68 S.Ct. at 8 (penalties incurred under the Agricultural Adjustment Act of 1938 for marketing cotton in excess of fixed quotas should not bear pre-judgment interest).

However, a restitution order under the VWPA is quite different from a fine or penalty payable to the government. The purpose of the VWPA restitution provisions is to compensate victims for their losses, not to punish the wrongdoer. *See Hughey v. United States,* 495 U.S. 411, 110 S.Ct. 1979, 1984–85, 109 L.Ed.2d 408 (1990) (summarizing congressional intent with respect to the VWPA).[6] In this case, the restitution order works to compensate the government completely for losses incurred as a result of Kress's fraud. Adding interest to the principal furthers that purpose. For example, if post-judgment interest were not required and the restitution not paid promptly, the government would suffer a loss, since the government cannot earn interest on or invest the money Kress retains from his fraud. *See Sleight,* 808 F.2d at 1020 n. 4. Therefore, requiring a defendant to pay interest on restitution due its victim is entirely consistent with the congressional purpose behind the VWPA and comports with the equitable principles surrounding the compensation of victims.

Wrestling with the same question, the Court of Appeals for the Fifth Circuit reached the same conclusion. In *United States v. Rochester,* 898 F.2d 971 (5th Cir. 1990), the court held that post-judgment interest on restitution owed a federal agency could be awarded pursuant to the VWPA.[7] Applying the *Rodgers/Sleight* analysis, the court reasoned that:

> restitution imposed pursuant to the VWPA ... is not in the nature of a fine. Rather, the purpose of the VWPA is "to ensure that wrongdoers, to the degree possible, make their victims whole."

---

**6.** In *Hughey,* the Supreme Court held that the VWPA did not authorize a restitution award for losses related to criminal conduct for which the defendant was not convicted. 110 S.Ct. at 1982. Kress argues that broad language in *Hughey* evinces the Court's intent to prohibit interest awards under the VWPA because the VWPA does not expressly authorize interest, and because "principles of lenity" demand that statutory ambiguities be resolved in favor of the defendant. However, this reading of *Hughey* goes too far. *Hughey* dealt with issues entirely different than the ones before us, and cannot reasonably be understood to apply to our case.

**7.** The Fifth Circuit also held that pre-judgment interest could be awarded. Since the district court here assessed only post-judgment interest, we need not decide if pre-judgment interest can properly be awarded under the VWPA. However, we do note that the portion of the *Rochester* case dealing with pre-judgment interest may be in conflict with our opinion in *Sleight,* where we held *inter alia* that pre-judgment interest assessed pursuant to the FPA was illegal. *Sleight,* 808 F.2d at 1020.

This purpose is effectuated by the payment of the fine to the victim rather than the Government.... [T]he purpose of the VWPA would be served by the inclusion of interest in the judgment.

*Id.* at 983 (citation omitted). *See also United States v. Peden*, 872 F.2d 1303 (7th Cir.1989) (while vacating a restitution order because district court did not make the requisite findings, court of appeals did not question the propriety of requiring defendant to pay accrued interest on the restitution owed).

This conclusion is further buttressed by our decision in *Sleight* in which we held that a restitution order which included post-judgment interest was permitted by the FPA. Although noting that restitution is "inherently a criminal penalty," we stated that when reduced to judgment, restitution "does not differ in essence from a judgment arising out of civil proceedings." 808 F.2d at 1020. In other words, we viewed a judgment of restitution as a debt to a victim. *Id.* at 1020. Based on that reasoning, we found that post-judgment interest was consistent with the purpose of the FPA "to make the victim whole." *Id.* While *Sleight* interpreted the FPA, its reasoning remains persuasive since the restitution provisions of the FPA and the VWPA are similar. *See generally Spambanato*, 876 F.2d at 7 (even though district court erroneously applied FPA, same restitution award could have been imposed under VWPA).

In short, the VWPA may be silent on the issue of interest, but it is clear that a restitution order including post-judgment interest furthers the compensatory goal of that Act. Such an order is not in the nature of a fine or penalty. Given the teachings of *Rodgers, Rochester,* and *Sleight* in this regard, we hold that the VWPA implicitly authorized the district court to require Kress to pay post-judgment interest on restitution due the federal government.

**8.** Kress suggests that the district court did not explicitly find that he was capable of paying the restitution until the probationary period started,

## IV.

■ Kress next contends that even if the VWPA authorizes as a condition of probation restitution awards which include interest, the interest should not begin accruing until the probation period begins. The VWPA does not speak to this contention, and no court has previously addressed the issue.

Lacking guidance, then, the best course is to turn to general principles espoused in *Rodgers, Rochester,* and *Sleight.* In those cases, the propriety of interest depended on whether such an award served the purpose behind the relevant statutes. Since the goal of the VWPA is to fully compensate victims for their losses, it follows that interest accruing from the date of sentencing, rather than from the date probation begins, must serve a compensatory purpose.

Here, the district court's order operates to compensate the government fully for losses incurred as a result of Kress's fraud. At the moment the sentencing order was entered, the restitutionary amount became fixed and the government could define its total loss. If at that time Kress chose to pay his restitution in full, the government would have incurred no further loss. However, Kress delayed paying the restitution until he had exhausted his appeals and had served his sentence. During that time, he was in possession of money rightfully belonging to the United States. While he held that money, it was presumably bearing interest, interest that the government would have been earning were it not for Kress's fraud and his decision to delay payment. *See Sleight,* 808 F.2d at 1020 n. 4. Thus, requiring interest to be computed from the instant the restitution award became certain generally provides complete compensation to the government. We therefore hold that the district court properly ordered interest on the restitution to be computed from March 14, 1989, the date of sentencing.[8]

and that therefore, we cannot affirm the sentencing order. *See* 18 U.S.C. § 3664(a) (directing the district court to make findings regarding

## V.

■ Kress also objects to the rate of interest set by the district court. Pursuant to 18 U.S.C. § 3565(b)(2) and (c)(2),[9] the district court ordered that interest on the restitutionary award be computed at a rate of 1½ percent monthly (18% annually). Asserting that this rate is inappropriate, Kress asks us to reduce it to 10.43%, which was the rate applicable to civil judgments at the time of sentencing. 28 U.S.C. § 1961.

Kress's present complaint with respect to the rate of interest which may permissibly be levied on the restitution payment was first raised in a Rule 35(a) motion filed on April 14, 1989. On June 5, 1989, the district court vacated the 366 day prison term to which Kress had been sentenced and substituted a four month term of imprisonment in its place. The court's order explicitly mentioned the terms as to restitution and the interest payable thereon, even though those terms remained as specified in the original order. While the court did not state that its order was in response to Kress's motion of April 14, 1989, it could not have been otherwise. *United States v. Jasper,* 481 F.2d 976, 979 (3d Cir.1973) (proximity in time between defendant's Rule 35 motion and the district court's order suggests order was in response to defendant's motion although the order did not so state). Kress took no appeal from the district court's June 5, 1989 ruling.

Upon his release from prison, Kress filed a motion for Modification of Conditions of Probation under Rule 32.1(b) and this appeal was denominated by Kress as an appeal from the district court's denial of a Rule 32.1(b) motion. However, we have determined that Kress's motion is more properly viewed as one brought pursuant to Rule 35(a).[10] Under the former version of Fed.R.Crim.P. 35(a), which applies in this case, courts are authorized to correct illegal sentences "at any time." However, even viewing Kress' present motion as brought pursuant to Rule 35(a) rather than Rule 32.1(b), we must decide whether former Rule 35(a) allows a defendant to bring successive motions complaining of the exact same "illegality." We hold that because Kress failed to appeal from the June 5, 1989 order of the district court denying his motion with respect to the issue of the statutory rate of interest, that issue is now res judicata and Kress cannot relitigate the same issue two years later in the form of a second Rule 35 motion.

■ Fed.R.App.P. 4(b) provides that the notice of appeal in a criminal case is to be filed within ten days of the entry of the judgment or order appealed. The timely filing of such a notice is mandatory and jurisdictional. *United States v. Grana,* 864 F.2d 312, 314 (3d Cir.1989); *Rothman v. United States,* 508 F.2d 648, 651 (3d Cir.1975). The requirements of Fed. R.App.P. 4(b) apply to all criminal appeals, including denials of Rule 35 motions. *United States v. Anna,* 843 F.2d 1146, 1147 (8th Cir.1988). Therefore, the failure of Kress to appeal from the district court's June 5, 1989 order regarding his Rule 35

---

the ability of defendant to pay restitution). This argument is without merit. In the sentencing order, the district court expressly found that Kress was capable of paying restitution, and set the amount of restitution at $300,000, *plus* interest computed from the day of sentencing. Reading the order as a whole, we can only conclude that the district court's finding on ability to pay referred to both the principal and the interest. Additionally, Kress's contention in this regard is somewhat disingenuous, given the fact that he paid the full $300,000 just two months after his release from prison.

If interest can accrue prior to probation, as we hold here, Kress asserts that it cannot accrue prior to the June 5, 1989, order vacating the prison term imposed by the March 14, 1989, order. He reasons, in effect, that the June 5 order rendered the March 14 order a nullity. This argument, too, lacks merit, since the restitution portion of the March 14 order was not amended in any way by the June 5 order.

**9.** Section 3565 of Title 18 applies by its terms to fines and penalties imposed in criminal cases. It was repealed pursuant to Pub.L. 98–473, Title II, ch. II, § 212(a)(2), Oct. 12, 1984, 98 Stat.1987. However, section 235 of Pub.L. 98–473 provided that 18 U.S.C. § 3565 was applicable to all crimes committed before November 1, 1987. Since Kress's criminal activity took place between 1983 and 1987, section 3565 is relevant to the present proceeding.

**10.** *See supra* note 4.

motion results in the issues resolved by that order being res judicata in the future processing of this case.

■ We could only decide the issue of the applicable rate of interest on this appeal if we accept Kress's conclusion that he was free to bring successive Rule 35 motions on the same issues in the district court, thereby allowing him to bypass the normal rules of appellate procedure, rather than filing a timely appeal from the order responding to his first Rule 35 motion. We cannot accept this premise.

The repetition of motions under former Rule 35(a) is somewhat analogous to successive habeas corpus proceedings but principles of res judicata do not strictly apply in the habeas corpus setting. Title 28 U.S.C. section 2255 provides that "[a]n appeal may be taken to the court of appeals from the order entered on the motion as from a final judgment on application for a writ of habeas corpus." The statute also provides that "[t]he sentencing court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner." *Id.* Under that provision of section 2255, the court's ruling on the first motion is not considered res judicata. Instead, it is within the discretion of the district court to refuse to entertain a second or successive motion for similar relief. *Gant v. United States*, 308 F.2d 728 (5th Cir.1962); *United States v. Quon*, 241 F.2d 161, 164 (2d Cir.), *cert. denied*, 354 U.S. 913, 77 S.Ct. 1302, 1 L.Ed.2d 1431 (1957).

■ While the doctrine of res judicata does not strictly apply in the habeas corpus setting, "an abusive use of the writ may be prevented and a prior refusal to discharge on a like application may be made the authority for a refusal on subsequent ones." *Wells v. United States*, 158 F.2d 833, 834 (5th Cir.), *cert. denied*, 331 U.S. 852, 67 S.Ct. 1728, 91 L.Ed. 1860 (1947). As noted by this court in *United States v. Leiby*, 820 F.2d 70 (3d Cir.1987), in the context of

section 2255, allowing petitioners the right to bring successive motions on the same grounds "would effectively grant prisoners *cartes blanches* to flout the rules of habeas corpus procedure." *Id.* at 74. A petitioner who failed to timely appeal a district court's denial of his first petition could simply file a second petition and then appeal the trial court's denial of his second petition. As we stated in *Leiby*, "[w]e refuse ... to allow through our back door what could not enter through our front door." *Id.*

The provisions of the former Rule 35(a) would, if read literally, allow a defendant to move to correct his sentence "at any time," regardless of the grounds for his prior motions or the required time within which to appeal adverse decisions. While this and other courts of appeals have concluded that subsequent section 2255 motions raising the same legal grounds are not barred as a matter of res judicata, we have previously noted that principles of res judicata do apply when successive Rule 35 motions are brought.

In *Jasper*, the defendant filed an initial Rule 35 motion for correction of his sentence. Approximately six weeks later, the district court issued an order vacating his sentence and correcting it with respect to provisions other than those about which the defendant had complained. The defendant failed to take an appeal from the court's order and after the time for filing an appeal had expired, filed a second Rule 35 motion containing the same application as had the first. 481 F.2d at 979. On appeal, we stated that "[t]o the extent that the order appealed from rejects a rule 35 motion identical to that which the court acted on [previously], it is, on the ground of res adjudicata, correct." [11] *Id.* at 979–80.

This case presents a similar situation. Kress raised the issue of the rate of interest in his first Rule 35 motion and failed to appeal from the court's order dated June 5, 1989. In an attempt to avoid the repercus-

**11.** Ultimately the court did entertain the appeal, noting that the proceedings were brought pursuant to Rule 35 *and* § 2255 and that "principles of res adjudicata have only limited application" to § 2255 proceedings. 481 F.2d at 980. The court concluded that the "statutory form of res adjudicata" set forth in § 2255 did not apply and relief was available pursuant to § 2255. *Id.*

sions of his failure to appeal the June 5, 1989 order, he brings the same issue in a second motion. Under principles of res judicata, Kress is precluded from relitigating the proper rate of interest.

## VI.

Finally, Kress argues that the accrual of interest during the pendency of his appeal impermissibly burdens his right to appeal. Interest began to accrue on the principal Kress owed the government on March 14, 1989, and it continued to accrue while Kress appealed his conviction. Indeed, the record shows that $60,000 of interest was added to the original restitution award before the Supreme Court denied certiorari. Kress reasons that this additional financial burden both interfered with his appeal and penalized him for pursuing that appeal.

It is true that the government cannot punish a defendant for appealing his case or otherwise restrict the avenues of a defendant's appeal where, as here, there is a right to appeal. *See generally North Carolina v. Pearce*, 395 U.S. 711, 724, 89 S.Ct. 2072, 2080, 23 L.Ed.2d 656 (1969). *Cf. Reisman v. Caplin*, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964); *Oklahoma Operating Co. v. Love*, 252 U.S. 331, 40 S.Ct. 338, 64 L.Ed. 596 (1920); *St. Louis, Iron Mountain and Southern Railway Co. v. Williams*, 251 U.S. 63, 40 S.Ct. 71, 64 L.Ed. 139 (1919); *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) (due process is violated if threat of severe penalties may deter party from seeking judicial review of administrative agency's decision). To do so constitutes a violation of due process. However, there is no indication in the record that Kress brought this issue to the attention of the district court or otherwise preserved it for appeal. Consequently, he can only secure relief if the district court committed "plain error" within the meaning of Fed.R.Crim.P. 52(b). The "plain error" doctrine "authorizes the Courts of Appeals to correct only particularly egregious errors, those errors that seriously affect the fairness, integrity or public reputation of judicial proceedings." *United States v. Thame*, 846 F.2d 200, 204 (3d Cir.), *cert. denied*, 488 U.S. 928, 109 S.Ct. 314, 102 L.Ed.2d 333 (1988)

(citation omitted). Given the circumstances of this case, it cannot be said that the district court committed plain error, or for that matter, committed any error, in assessing interest against Kress.

The scheme embodied in the VWPA requires district courts to make findings on ability to pay before ordering restitution. *See* 18 U.S.C. § 3664(a) (court must consider "the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate."). This requirement ensures that a defendant will be able to pay restitution, and also ensures that restitution payments will not unduly limit his right to appeal. Thus, if the district court did not make findings on Kress's ability to pay, we would have to vacate the restitution order and remand the case. If the district court's finding were erroneous and somehow impaired Kress's right to appeal, a similar result would ensue. It is clear, then, that the VWPA provides defendants like Kress all the process they are due by guaranteeing procedures to protect their rights. Due process requirements are therefore met as long as the district court makes findings regarding ability to pay, and as long as those findings are not tainted by error.

Upon sentencing Kress and ordering restitution, the district court found that Kress could afford to pay $300,000 in restitution, and could afford to pay eighteen percent interest on the principal, with that interest to begin accruing immediately. In his April 19, 1989, Rule 35 motion, Kress asserted that he did not have the financial ability to pay the added interest, but did not offer any evidence to call into question the district court's earlier finding. The motion was denied without a hearing. On appeal, Kress has similarly failed to demonstrate an inability to pay restitution plus interest or any interference with his right to appeal. To the contrary, Kress appealed his conviction up to the Supreme Court and paid the full amount of restitution without interest shortly after his release from prison, suggesting that he at all times could afford to pay restitution and could absorb the cost of his appeals. There is nothing to

indicate that the interest unduly burdened Kress's right to an appeal.

### VII.

To summarize, we hold that a district court, upon making findings regarding a defendant's ability to pay restitution, may order that defendant to pay restitution, along with interest, pursuant to the VWPA. Interest may begin to accrue the day the restitution order is entered. Because Kress failed to appeal from the district court's June 5, 1989 order regarding his first Rule 35 motion, Kress cannot now seek to relitigate the applicable rate of interest. Since the district court's sentencing order in the present case conforms with law and is not based on erroneous findings, we will affirm the order of the district court in all respects.