Robert Henry GARDINER, Appellant,

v.

UNITED STATES of America,
Appellee.

Hunilda Balbas GARDINER, Appellant,

v.

UNITED STATES of America,
Appellee.

Nos. 20182, 20183.

United States Court of Appeals
Fifth Circuit.

July 30, 1963.

Rehearing Denied Sept. 12, 1963.

Newton M. Crain, Jr., Blades, Crain, Slator & Winters, Houston, Tex., for appellant.

William A. Jackson, Asst. U. S. Atty., Woodrow Seals, U. S. Atty., William B. Butler, James R. Gough, Asst. U. S. Attys., Houston, Tex., for appellee the United States.

Before HUTCHESON, Circuit Judge, LUMBARD, Chief Judge,* and BROWN, Circuit Judge.

HUTCHESON, Circuit Judge.

The appellants were tried together and convicted under separate indictments, for conspiring to smuggle marihuana from Mexico into the United States, transport it to New York, and sell it there, knowing it to have been smuggled, in violation of 21 U.S.C.A. § 176a.[1] The indictment against Robert Gardiner, which was returned first, alleged that he

---

* Of the Second Circuit, sitting by designation.

1. "Notwithstanding any other provision of law, whoever, knowingly, with intent

conspired with Arthur Athens, Alberta Edelstein Curtis, and Colette Suzanne Meyers, as well as other, unidentified persons. The later indictment against Robert's wife, Hunilda Balbas Gardiner, is identical to the earlier one, except that Robert is therein named as a conspirator with her, and the indictment alleges an additional overt act in which she participated, namely, that on or about October 29, 1960, Hunilda met Alberta Curtis at Monterrey, Mexico.

At the trial, the government produced the testimony of Athens and Mrs. Curtis that Athens first met Robert Gardiner in New York City, through Arthur Curtis, the husband of Mrs. Curtis, in connection with a sale of marihuana by Gardiner to Athens, the sale being arranged by Arthur Curtis. Subsequently, Gardiner offered Athens an opportunity to go into business with him, Gardiner stating that he had a source of supply in Mexico, an established method for smuggling the marihuana to New York, and a group of customers in New York; however, Gardiner stated that he wished to remain in Mexico, while someone else handled the sales and transportation aspects of the business. To demonstrate to Athens the substantial nature of his business, Robert showed him a supply of marihuana that he had on hand and introduced him to some of his customers, including Max Goldstein, to whom Robert made a sale in Athens' presence, and who confirmed this as a government witness at the trial.

Athens agreed to the partnership. Subsequently, and pursuant to that agreement, Athens and Robert Gardiner smuggled two loads of marihuana across the Mexico-Texas border; Colette Meyers, who joined the conspiracy after the first crossing, carried the second load across.

Preparing for the third shipment across the border, Athens secured the agreement of Mrs. Curtis to make the crossing. Mrs. Curtis traveled to Monterrey, where Robert Gardiner contacted her. Hunilda Gardiner was present at the meeting between Robert and Mrs. Curtis. Robert discovered that there was room in Mrs. Curtis' rented car for more marihuana than he had prepared for shipment; the three therefore went to the Gardiners' motel, where Robert and Hunilda rolled additional marihuana into "footballs". The three then drove to the outskirts of town where, while Hunilda and Mrs. Curtis served as look-outs, Robert concealed the marihuana in the car. Mrs. Curtis then left Monterrey for Laredo; she was apprehended while crossing the border with the marihuana, and, subsequently, the entire smuggling operation was uncovered.

The appellants assert a number of specifications of error, some of which involve points not raised below and none of which justify either elaborate discussion or reversal.

Three of the specifications are asserted only by Hunilda Balbas Gardiner. She contends, first, that the trial court erred in consolidating the indictments for trial and in overruling her motion for a separate trial. It is argued that most of the evidence adduced at the trial concerned only Robert Gardiner's participation in the conspiracy, and that her defense was prejudiced by the confusion between that evidence and the evidence less in quantity, which tended to show her participation in the conspiracy. It is evident, however, that Hunilda and Robert were being tried for participating in the same conspiracy, that is, in one continuing agreement to effectuate a single, unified purpose, namely, to smug-

to defraud the United States, imports or brings into the United States marihuana contrary to law, or smuggles or clandestinely introduces into the United States marihuana which should have been invoiced, or receives, conceals, buys, sells, or in any other manner facilitates the transportation, concealment, or sale of such marihuana after being imported or

brought in, knowing the same to have been imported or brought into the United States contrary to law, *or whoever conspires to do any of the foregoing acts*, shall be imprisoned not less than five or more than twenty years and, in addition, may be fined not more than $20,-000. * * *" 21 U.S.C.A. § 176a. (emphasis added)

gle marihuana into the United States and to sell it here. Thus, all of the evidence was relevant against Hunilda insofar as it went to show the existence of the conspiracy, and it could, and no doubt would, have been introduced against her in a separate trial. While it is true, as she argues, that the court did not specifically instruct that, for the purpose of showing her participation in the conspiracy (as opposed to the existence of the conspiracy in which she allegedly participated), the evidence showing Robert's participation would not be relevant, and, while such an instruction might have been desirable, we think that the charge, taken as a whole, sufficiently delineated the evidence going to show Hunilda's participation; the court instructed, also, that the burden was on the government to prove, not Hunilda's mere knowledge of the conspiracy, but her participation in it.

■ Mrs. Gardiner contends, further, that the trial court erred in overruling her motions for acquittal, on the theory that the only evidence linking her with the conspiracy was the testimony of Mrs. Curtis who, having previously been convicted of participating in the conspiracy, was interested in possible leniency for herself and for her husband, whose trial for participation in the conspiracy was still pending; additionally, Mrs. Curtis' testimony did not stand uncontradicted. At most, however, an issue was raised as to Mrs. Curtis' credibility. Furthermore, there was other evidence tending to show Mrs. Gardiner's participation in the conspiracy. The witness Athens testified that, on his second trip to Mexico, he and Robert Gardiner worked for several hours for each of three days preparing marihuana for shipment in the apartment in which the Gardiners were staying, and that Hunilda drove him and Robert to the airport where they checked four suitcases, two of which contained the marihuana. There was evidence presented as to the New York bank account of Mrs. Gardiner, which evidence tended to show that the account was being used for the purpose of transmitting the proceeds from the sale of marihuana from New York City to the Gardiners in Mexico. We think it clear, when all of the evidence is considered, that the trial court was amply justified in overruling the motions for acquittal.

■ Finally, Hunilda Gardiner contends that the trial court erred in overruling her motion for continuance, inasmuch as the trial began less than three weeks after the indictment was returned against her. Aside from the assertion of the general proposition, she makes no attempt to show wherein she was prejudiced by the court's action, nor did she show below why she needed additional time to prepare her defense, except for general statements that she needed to secure more witnesses. The trial court did not err in overruling the motion.

■ As to the government witnesses Athens and Mrs. Curtis, both appellants contend that the court erred in charging that their earlier sentences could not now be changed, thereby "in effect testifying to the jury" that those convicted accomplice witnesses had nothing to gain by testifying and thus advising the jury of facts not introduced into evidence. The appellants made no objection to that charge in the trial court and hence cannot now complain of it. Rule 30, Fed.Rules Crim.Proc. 18 U.S.C.A.; Fahning v. United States, 5th Cir., 1962, 299 F.2d 579.

■■ As to the government witness, Max Goldstein, it is argued that the court erred in failing to charge that Goldstein was an accomplice or, alternatively, in failing to instruct the jury that it should determine whether he was an accomplice, and that, in either event, his testimony should be viewed with caution. Appellants did not request such a charge; again, they are confronted with the dictate of Rule 30. Indeed, it is evident that Goldstein was not an accomplice to the conspiracy, having been only a customer of Robert Gardiner, who introduced him to Athens before the conspiracy

began.[2] The appellants also attack that portion of the charge in which the judge stated that he regarded Goldstein as a forceful witness for the government, one having nothing to gain or lose by the outcome of the case.[3] Here, once more, the appellants make their complaint for the first time. We think it beyond cavil that the appellants have failed clearly to show such prejudice as would constitute an abuse of discretion, particularly abuse cognizable as plain error under Rule 52 (b), Fed.Rules Crim.Proc. 18 U.S.C.A.

We have considered the other arguments advanced by the appellants and find them without merit.

No showing of reversible error is made. The judgment is affirmed.

---

2. In fact, the only objection made by the appellants to that part of the charge dealing with Goldstein was on the ground that he did not testify to any part of the conspiracy.

3. The judge did, of course, give the customary instruction that the jury was not bound by his comment on the evidence.