UNITED STATES of America,
Plaintiff-Appellee,

v.

Henry Forrest MARSHALL and Robert Dempsey, III, Defendants-Appellants.

No. 74–2203.

United States Court of Appeals,
Fifth Circuit.

May 27, 1975.

Rehearing and Rehearing En Banc Denied Aug. 7, 1975.

Bernard A. Horton, New Orleans, La., for Marshall.

George M. Papale, Gretna, La. (Court-appointed), for Dempsey.

Robert Habans, Asst. U. S. Atty., Gerald J. Gallinghouse, U. S. Atty., Mary Williams Cazalas, Asst. U. S. Atty., New Orleans, La., for plaintiff-appellee.

Before AINSWORTH, GODBOLD and SIMPSON, Circuit Judges.

GODBOLD, Circuit Judge:

Count I of the indictment in this case charged appellants Dempsey and Marshall and defendant Howard, who pleaded guilty and did not appeal, with conspiracy to possess cocaine with intent to distribute and to cause distribution. Count II charged Marshall with distribution of cocaine with Howard as an aider and abettor, and Count III charged Marshall and Howard with distribution of another quantity of cocaine. Dempsey was not charged in Count II or III.

The convictions of both Dempsey and Marshall are affirmed.

Count I, the conspiracy count, alleged 27 overt acts of which seven involved Dempsey. Three of these seven were the same acts that had been charged in three substantive counts of an earlier indictment against Dempsey, to which Dempsey had pleaded guilty and the sentence under which he had begun to serve. Dempsey timely asserted in the District Court the claim that he was entitled to dismissal of the instant indictment against him, alleging as grounds collateral estoppel and double jeopardy. Also he alleged that he would not have pleaded guilty in the earlier case against him if he had known or anticipated that the government would follow up with a conspiracy indictment, and that he could not effectively defend himself against the conspiracy charge because the earlier plea made conviction of conspiracy automatic.

Dempsey relies upon the concurring opinion of Justices Brennan, Douglas and Marshall in Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), to the effect that the double jeopardy clause requires the government to join in one trial all charges against a defendant that grow out of a single criminal act, occurrence, episode or transaction. Id. at 453–454, 90 S.Ct. 1189, 25 L.Ed.2d at 481. In Ashe the petitioner had been charged with armed robbery of one of several players in a poker game and found not guilty, and subsequently was charged, tried and convicted of robbery of another of the players. The only rationally conceivable issue in dispute before the jury in the first trial was whether the petitioner had been one of the robbers, and the jury by its verdict had found that he was not. The same issue was before the second jury, with only the identity of the victim changed. In the

instant situation Dempsey does not claim the benefit, under the principle of double jeopardy with the *Ashe* gloss, of a prior acquittal. He was convicted in his first trial rather than acquitted. Pared to its real content, his argument is that as a policy matter there should be a single trial of a person with respect to all issues arising out of a single transaction, occurrence etc. That may be a desirable prosecutorial aim for an overburdened court system faced with a growing volume of cases, but it is not a constitutional imperative.[1] Additionally, the two offenses charged to Dempsey in the present and the previous cases are separate charges requiring distinct elements of proof. We have repeatedly held, and lately reiterated, United States v. Pacheco, 489 F.2d 554, 557 (CA5, 1974), that the commission of a substantive offense and a conspiracy to commit that offense are separate and distinct and that ordinarily a person may be convicted of and sentenced for both. Distribution of narcotics is not necessarily a two-person crime as contemplated by the limited scope of "Wharton's Rule." *Id.* at 558. While distribution may connote a buyer and seller it also, and indeed often does, connote plurality of sellers or buyers or both.

Dempsey's claim that he was entitled to a judgment of acquittal for insufficiency of evidence is without merit.

Before trial Marshall claimed that he was entitled to a severance, asserting that unavoidably he would be prejudiced in a joint trial with Dempsey because introduction of Dempsey's earlier plea to the three cocaine transactions would automatically establish Count I, the conspiracy count, against him (Marshall). The motion was denied. At trial Marshall reasserted his motion for severance after Dempsey introduced the judgment of his own previous conviction.

Denial of the pre-trial motion for severance was not reversible error. It was not clear at that point that the recital of Dempsey's prior conviction would be offered in evidence. The three overt acts did not mention Dempsey as an actor, and Marshall's contention that evidence that these three acts in fact occurred would inevitably establish his guilt of conspiracy is overblown. With respect to the denial of the motion when reasserted at trial, we pretermit discussion since Marshall was convicted under all counts and given concurrent sentences.[2] Conviction on the conspiracy count did not "fatally infect" the substantive counts so as to preclude application of the concurrent sentence doctrine. See United States v. Tyler, 505 F.2d 1329 (CA5, 1975).

In cross-examination Marshall admitted that he had been a user of narcotics. The government, in the guise of attacking his credibility, displayed to him a federal firearms transaction form signed by him. It was neither verbally identified nor displayed to the jury. Counsel had Marshall read aloud from the form a question asking whether he was a user of drugs. Marshall acknowledged that in executing the document he had answered the question in the negative. Having at least arguably established that Marshall had falsely answered the question (there was considerable dialogue over whether the question, phrased in the present tense, reached prior usage of drugs), the government had Marshall read the certificate that he had made in signing the document, which included this statement:

> I hereby certify that the answers to the above are true and correct. I understand that a person who answers any of the above questions in the affirmative is prohibited by Federal law from purchasing and/or possessing a

---

1. It is worth noting that at trial the government did not introduce the record of Dempsey's prior guilty plea and conviction. Dempsey introduced it in support of his effort to convince the jury that he had been punished once and that once was enough.

2. We note, however, that Marshall did not object to introduction of the judgment of Dempsey's conviction but rather asked for a limiting instruction, which the court gave, and only then did he review his motion for severance.

firearm. I also understand that the making of any false oral or written statement or the exhibiting of any false or misrepresented identification with respect to this transaction is a crime punishable as a felony.

Marshall did not object at the time to reading the certificate, which occurred at the end of a trial day. But, before court began the following morning, the trial judge instructed the government to make no further reference to the document. He noted that the jury had not seen it and expressed his view that the jury would not necessarily infer that it was a federal firearm transactions form. When court convened he gave an instruction to the jury limiting the testimony relating to the form and the certificate to the issue of Marshall's credibility.

Marshall urges that this sequence of events inevitably prejudiced him by implying that he was guilty of a felony concerning firearms. We would be naive to accept the government's argument that having Marshall read the certificate was neutral and intended to do no more than show that he was not a credible person. That limited purpose could have been achieved by phrasing differently the questions addressed to Marshall, or by redaction, so that the document was not identified as relating to firearms and the certificate's reference to making a false statement as a felony was not revealed. The manner in which the evidence actually was presented does no credit to the prosecution. Nevertheless, under the circumstances it clearly was not reversible error.

The court refused Marshall's request for an instruction on credibility of an addict-informer.[3] See United States v. Collins, 472 F.2d 1017 (CA5), cert. denied, 409 U.S. 1011, 93 S.Ct. 437, 34 L.Ed.2d 306 (1972). This was not reversible error. The testimony of at least two of three addict-informers was substantially corroborated. See Govt. of Virgin Islands v. Hendricks, 476 F.2d 776 (CA3, 1973). Also, the requested instruction contained the phrase that "a drug addict is inherently a perjurer," which justified refusal of the charge. As the Third Circuit noted in *Hendricks*, this phrase would make the testimony incompetent altogether. 476 F.2d at 779.

The other contentions of the parties require no discussion. None reveal reversible error.

The convictions are affirmed.

---

3. The court did instruct that testimony of an informer testifying for pay or immunity or personal advantage must be examined and weighed with greater care than usual.