UNITED STATES of America, Appellee,

v.

Edward WILLIAMS,
Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

Andrew BLANDIN, a/k/a "Zigzag"
"Jigsaw," Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

Anthony TATE, a/k/a "Coco,"
Defendant, Appellant.

Nos. 86–1082 to 86–1084.

United States Court of Appeals,
First Circuit.

Argued Sept. 4, 1986.

Decided Dec. 31, 1986.

78

John W. Laymon, Boston, Mass., for appellant Andrew Blandin.

John C. Doherty, Andover, Mass., for appellant Edward Williams.

William A. Brown with whom Brown & Prince, Boston, Mass., was on brief, for appellant Anthony Tate.

Oliver C. Mitchell, Jr., Asst. U.S. Atty., with whom William F. Weld, U.S. Atty., Boston, Mass., was on brief for appellee.

Before BOWNES and TORRUELLA, Circuit Judges, and CARTER,* District Judge.

GENE CARTER, District Judge.

On August 12, 1985, a United States grand jury sitting in Boston returned a one-count indictment charging numerous defendants, allegedly members of an organization known as the Capsule Boys, with conspiracy to possess with intent to distribute and to distribute heroin and cocaine in violation of 21 U.S.C. § 846. The present appeal arises from the joint trial of defendants Edward Williams, Andrew Blandin, and Anthony Tate, against whom a jury returned guilty verdicts on December 2, 1985. The defendants-appellants challenge the validity of these verdicts by alleging numerous errors in the conduct of their trial. We affirm the convictions of all three appellants and discuss each of their points in turn.

A. *Exposing the Jury to Extrinsic Material*

Appellants Williams and Blandin contend that the trial court committed reversible error when it read portions of the indictment to the jury. Williams had specifically requested that the indictment not be submitted to the jury, and the court had found that the indictment was "highly prejudicial." The basis for the court's finding was that the indictment "lists a whole bunch of other people, it lists a whole

* Of the District of Maine, sitting by designation.

bunch of things that, in fact, do not implicate these defendants." TR Vol. VIII, p. 12. Consequently, the court ruled, over the objection of Tate, that the indictment would not be submitted to the jury unless the attorneys developed a sanitized version that included only those portions pertaining to the defendants in that case. Despite the court's ruling, Tate's attorney devoted a portion of his argument to the indictment and even read parts of it to the jury.[1]

■ In response to Tate's argument, the court *sua sponte* raised the issue of the indictment in the midst of the jury instructions. The court had prefaced its instructions with a limiting instruction regarding what the jury should consider as evidence. The court began discussing the indictment by acknowledging Tate's reference to it and by defining the term "indictment" for the jury. The court characterized the indictment as "an accusation. It is not evidence of guilt and it certainly is not proof of guilt." TR Vol. VIII, p. 106. The court then described the contents of the indictment to the jury. It told the jury that the indictment charged that the defendants worked for the Capsule Boys organization. The court paraphrased the indictment as describing Williams "as a kind of middle-level management person" and Blandin and Tate "as workers." TR Vol. VIII, p. 107. Shortly thereafter, the court defined overt acts and stated that the indictment charged that Williams had possessed a sawed-off shotgun and a quantity of encapsulated heroin, that Blandin had possessed encapsulated heroin, cocaine, firearms, and approximately $23,000 in cash, and that Williams and Tate had distributed encapsulated heroin and cocaine. The court, however, did not caution the jury not to consider overt acts as to which there had been no evidence presented at trial, although it did tell the jury that the government did not

have to prove any overt acts. The court went on to add: "Then it [the indictment] has some other things about Mr. Williams and Mr. Blandin." *Id.* at 109. The court then defined the crime of conspiracy and explained that the government did not need to prove either actual possession or actual distribution in order to prove conspiracy. *Id.* at 111.

At the close of the charge, Williams's counsel moved for a mistrial based on the reading of two of the overt acts: the possession of a sawed-off shotgun and the possession of a quantity of encapsulated heroin. The court denied his motion, in which the other defendants had joined. No defendant, however, requested a curative instruction regarding these overt acts. Both Williams and Blandin now assert that the denial of the mistrial motion is reversible error—Williams on the ground that the lack of any evidence regarding a sawed-off shotgun rendered the reading of both overt acts prejudicial and Blandin on the ground that the allegation that Williams possessed a sawed-off shotgun tainted the verdict as to Williams and therefore requires setting aside the verdicts against all defendants. Williams also contends that error resulted from his request for a corrective instruction regarding the court's mischaracterization of Williams as a "Lieutenant." Although the court had not used the word "Lieutenant" in the charge, in response to Williams's request it informed the jury that the indictment did not say Williams was a lieutenant in the organization. *Id.* at 128. Williams now claims that the corrective instruction compounded the original error, although he made no objection at that time. He further claims that the court's actual paraphrase of the indictment, that Williams was a "middle-level management person," was an improper comment on the evidence. In addition, Williams claims, also for the

---

1. It is clear that the present ground for appeal arose from the trial court's attempt to counter this argument. With the benefit of hindsight, we offer what we believe to be a preferable course of action. A trial judge, when faced with an improper argument, is well within her discretion to stop counsel in the midst of argument even in the absence of objection. The judge can explain at sidebar both her grounds for finding the argument improper and the sanction should the argument continue. In addition to providing us with a record adequate for review, this course has the salutary effect of curing error when the cure is most effective.

first time on appeal, that the court's comment, about the indictment having "some other things about Mr. Williams and Mr. Blandin," is the equivalent to an argument based on extrinsic evidence.

Before we can consider properly each of appellants' claims, we should first evaluate the trial court's actions in light of Tate's closing argument. After reviewing the closing argument, we find that the court was well within its discretion in discussing the indictment *sua sponte*. The theme of counsel's argument was that the breadth of the indictment coupled with merely one mention of appellant Tate on page nine must lead the jury to conclude that the government could not prove its case against Tate. The negative implication is, of course, that the remainder of the undisclosed indictment was replete with bad acts committed by Williams and Blandin. It was clearly proper for the trial court to attempt to dispel this negative implication by placing in context Tate's references to the indictment. We turn now to the court's specific actions and consider each of appellants' claims in turn.

### 1. *Overt Acts*

■ Williams first contends that, by reading two overt acts to the jury, the court erroneously placed extrinsic evidence before the jury. Williams argues that this extrinsic evidence was prejudicial both because the court had excluded the indict-

ment as prejudicial and because the other evidence against him was insufficient to establish a conspiracy. Williams's contentions must fail, however, under our recent holding in *United States v. Forzese*, 756 F.2d 217 (1st Cir.1985). In *Forzese*, we held that the submission to the jury of an indictment that contains overt acts unsubstantiated by the evidence was harmless error.[2] *Forzese* was a mail fraud and conspiracy case under 18 U.S.C. §§ 371, 1341, which required the jury to find the commission of one overt act in order to find that a conspiracy existed. We determine, however, that its rationale is equally applicable to a section 846 conspiracy, which, as Williams agrees, does not require that the government prove any overt act committed in furtherance of the conspiracy. *E.g., United States v. Cruz*, 568 F.2d 781, 782–83 (1st Cir.1978), *cert. denied*, 444 U.S. 898, 100 S.Ct. 205, 62 L.Ed.2d 133 *reh'g denied*, 444 U.S. 946, 100 S.Ct. 308, 62 L.Ed.2d 315 (1979); *United States v. DeJesus*, 520 F.2d 298, 301 (1st Cir.), *cert. denied*, 423 U.S. 865, 96 S.Ct. 126, 46 L.Ed.2d 94 (1975). The rationale of *Forzese* is that although the inclusion of overt acts not supported by the evidence is an error of constitutional dimension, the error is nevertheless subject to analysis under the harmless error doctrine. We divine no reason why this rationale should be inapplicable to a section 846 conspiracy in which proof of overt acts is not required to be made.[3] We do not im-

---

**2.** We note that the courts of appeals have applied many different formulations of the standard of review that appellate courts should apply to a review of the prejudicial effect of extrinsic material. *See, e.g., United States v. Griffith*, 756 F.2d 1244, 1252 (6th Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 114, 88 L.Ed.2d 93 (1985) (defendant must demonstrate actual prejudice before the trial court; review is for abuse of discretion); *Gibson v. Clanon*, 633 F.2d 851, 855 (9th Cir.1980), *cert. denied*, 450 U.S. 1035, 101 S.Ct. 1749, 68 L.Ed.2d 231 (1981) (new trial is not required if it can be found beyond a reasonable doubt that the extrinsic material did not contribute to the verdict); *United States v. Marx*, 485 F.2d 1179, 1184 (10th Cir.1973), *cert. denied*, 416 U.S. 986, 94 S.Ct. 2391, 40 L.Ed.2d 764 (1974) (standard is whether there is the slightest possibility that harm resulted); *United States v. Howard*, 506 F.2d 865, 869 (5th Cir.

1975) (standard is whether there is a reasonable possibility of prejudice); *Osborne v. United States*, 351 F.2d 111, 119 (8th Cir.1965) (standard is whether error might have caused substantial injury to defendant). The *Forzese* standard requires us to find the material harmless beyond a reasonable doubt. As the Seventh Circuit has observed, this standard is interchangeable with the "reasonable possibility" standard of the cited cases. *United States v. Bruscino*, 687 F.2d 938, 940 (7th Cir.1982) (en banc), *cert. denied*, 459 U.S. 1211, 103 S.Ct. 1205, 75 L.Ed.2d 446, 459 U.S. 1228, 103 S.Ct. 1235, 75 L.Ed.2d 468 (1983).

**3.** *Forzese* included a lengthy instruction cautioning the jury not to consider any alleged overt act on which the jury had not heard evidence. 756 F.2d at 221. As we have noted, the court in the case below did not give a similar cautionary

ply, however, that we approve of the practice of unnecessarily placing unproven allegations of fact before the jury. We therefore reiterate the point we made in *Forzese*: "the better practice might have been to edit the conspiracy count before its submission to the jury." 756 F.2d at 222. In the present case the inclusion of the overt act regarding the possession of a sawed-off shotgun raises the presumption of prejudice.

■ In analyzing whether actual prejudice flowed from this error, we note that the government has the burden to show that the extrinsic material was harmless beyond a reasonable doubt. *Lacy v. Gardino*, 791 F.2d 980, 983 (1st Cir.1986) (citing *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967)). The government's direct evidence consisted of the testimony of at least six witnesses who were members of the Capsule Boys, all of whom, according to the government, testified that Williams worked with the Capsule Boys, and some of whom testified that Williams was a leader within the organization. In addition, the witnesses testified that Williams had distributed encapsulated heroin, the other overt act that was read to the jury and one upon which the jury did hear evidence, although Williams disputes the credibility of that evidence.[4] The government maintains that the evidence against Williams "was overwhelming." Brief for Appellee at 24. Nevertheless, the allegation that Williams possessed a sawed-off shotgun is an allegation that contains serious implications of criminality.

Consequently, we wish to review the evidence with great care.

■ Williams challenges the government's characterization of the evidence and claims that the government cannot meet its burden for two reasons. First, Williams stresses that the trial court had originally ruled that the indictment was highly prejudicial. The basis for the court's ruling, however, was not the material that related to these appellants but rather the sheer volume of material that did not relate to them. In fact, the court was willing to submit to the jury the portion of the indictment about these appellants. Implicit in the court's determination that a sanitized version would be acceptable is a finding that the sanitized version would not be prejudicial. Consequently, we cannot say that the court's prior ruling rendered the court's subsequent actions *per se* prejudicial.

Second, Williams claims that the government cannot meet its burden because there was insufficient evidence on which to convict him of conspiracy. Williams characterizes the evidence as establishing that he was merely an acquaintance of some members of the Capsule Boys. A fair reading of Williams's brief indicates that he bases this characterization on his challenge to the credibility of the government's witnesses. Our careful review of the evidence reveals that a number of the government's witnesses testified that Williams handled drugs for the Capsule Boys; several testified that he also handled weapons. All these witnesses were connected to the con-

---

instruction. We do not, however, find this distinction to be dispositive. First, the conspiracy in *Forzese* required the jury to find that the defendant committed one overt act in the furtherance of the conspiracy. Therefore, the court took great care to insure that the jury considered only those overt acts on which it had received evidence. No such caution is required where an overt act is not an element of the crime charged. Second, in *Forzese* we relied on the holding of *United States v. Sellers*, 603 F.2d 53, 56 (8th Cir.1979), *vacated on other grounds*, 447 U.S. 932, 100 S.Ct. 3033, 65 L.Ed.2d 1127 (1980). *Sellers*, which was a section 846 conspiracy, does not mention the necessity or even the existence of a cautionary instruction. Final-

ly, the court in the present case did instruct the jury that the indictment was not evidence. Although the instruction might have been more explicit with regard to the overt acts, we do not find that it failed to apprise the jury of the nonevidentiary nature of the indictment.

4. Williams argues that this overt act was "never conceded by [him], but trial testimony as to [his] physical possession of drugs ... was extremely vague and highly problematical." Brief for Appellant Williams at 11. The quality of this evidence was, of course, for the jury to evaluate.

spiracy and testified in exchange for immunity. Williams's characterization of the evidence against him rests on his discounting of this testimony on credibility grounds. Appellant was able to develop fully his credibility arguments before both the jury and the trial court. We do not find that the accomplices' testimony was totally discredited. Moreover, in light of the testimony regarding Williams's distribution of handguns, automatic weapons, including an "Uzi," and a shotgun to other members of the Capsule Boys, the trial court's mention of a sawed-off shotgun was clearly harmless.

■ Williams also raises insufficiency of the evidence as a separate ground for appeal. For the reasons stated above, we cannot say that the evidence, viewed as it must be in light most favorable to the government, was insufficient to convict Williams of conspiracy.

■ Blandin's claim of prejudice also derives from this same overt act. Relying on *United States v. Bruscino*, 662 F.2d 450 (7th Cir.1981), *rev'd*, 687 F.2d 938 (7th Cir. 1982) (en banc), *cert. denied*, 459 U.S. 1211, 103 S.Ct. 1235, 75 L.Ed.2d 468 (1983), Blandin argues that prejudice to Williams must be inferred from the inclusion of the unsubstantiated overt act [5] and that the prejudice that attaches to Williams also taints Blandin's conviction. Blandin's argument fails on both points.

We have discussed above in detail the standard we apply in evaluating the effect of an unsubstantiated overt act in the indictment: the standard is a presumption of prejudice subject to a harmless error analysis; it is not *per se* prejudice. Because we have found the error harmless as to Williams, it defies reason to find that the error nevertheless prejudiced Blandin. In addition, Blandin's reliance on *Bruscino* is

misplaced. We find that Blandin's relationship to Williams is not analogous to the principal-accomplice relationship present in *Bruscino*. In *Bruscino*, both defendants were charged with the substantive crime of murder and with conspiracy to commit murder. The only evidence against the codefendant was that he aided and abetted the principal actor. The Seventh Circuit had originally found that there was a reasonable possibility that the verdict against the principal was tainted, a finding which the Circuit sitting *en banc* later reversed, and consequently had also found that the taint must extend to the accomplice. 662 F.2d at 459–60.

In the case before us, however, Blandin is not charged merely as an accomplice to Williams. Instead, Blandin and Williams are each on an independent footing with regard to their respective guilt of the charged conspiracy to distribute drugs. Blandin's guilt is in no way derivative of Williams's guilt; the jury could have found a conspiracy to which Blandin was a part but to which Williams was not a part, if it concluded that the evidence supported that finding. Consequently, Blandin's claim of derivative prejudice must fail.

## 2. *The Other Allegations*

■ Turning now to the remainder of the claims arising from the reading of the indictment, we note that none of these objections were raised in the trial court. Ordinarily, we will not take notice of an error that is not preserved unless the error amounts to "plain error," Fed.R.Crim.P. 52(b), or the issue is " 'so compelling as virtually to insure [appellant's] success.' " *United States v. West*, 723 F.2d 1, 2 n. 1 (1st Cir.1983), *cert. denied*, 469 U.S. 1188, 105 S.Ct. 956, 83 L.Ed.2d 963 (1985) (*quoting Dobb v. Baker*, 505 F.2d 1041, 1044 (1st

5. Blandin relies on *United States v. Howard*, 506 F.2d 865 (5th Cir.1975), for this first point. We do not read *Howard* as stating a *per se* rule. *Howard* involved a defendant's appeal of his motion for a new trial, which the defendant had based on evidence from a juror that he had been pressured into a guilty verdict based on extrinsic material offered by another juror. Because

the trial court had denied the motion without a hearing, the Fifth Circuit merely remanded the case for a trial court determination of "whether there was any reasonable possibility of prejudice" to that defendant. *Id.* at 866. We find the Fifth Circuit standard to be substantively no different than the *Forzese* standard we apply today.

Cir.1974)). Williams first contends that the court's corrective instruction regarding his status as a "Lieutenant" is error. We believe that the court's clear instruction that the indictment did not allege that Williams was a lieutenant effectively purged any prejudice to his substantial rights. Nor do we agree with Williams's second point, that error arose from the court's mischaracterization of the allegations in the indictment when it described Williams as a "middle-level management person." The indictment alleges that Williams was a leader of the Capsule Boys. In addition, several witnesses testified that Williams acted in a supervisory capacity. We, therefore, find no error in the court's paraphrasing of Williams's alleged status in the indictment.

We turn finally to the court's summarization of the remaining allegations in the indictment as "some other things about Mr. Williams and Mr. Blandin." Williams alleges that the court's statement is analogous to an argument based on extrinsic evidence. As we stated in *United States v. Flaherty*, 668 F.2d 566 (1st Cir.1981), "[a]rguing evidence not presented is harmless error, however, if the judge, on objection, instructs the jury that closing arguments are not evidence and that the jury's recollections control, and if the absent evidence does not weigh heavily on the other evidence in the case." *Id.* at 595 (citations omitted). In the case before us, there was no objection to the court's summarization. Nevertheless, the court did instruct the jury in accordance with *Flaherty.* TR Vol. VIII, p. 99. Because this brief summarization could not have weighed heavily on the jury given the evidence of the conspiracy, we find that the error is not plain error.

### B. *Accidental Viewing of Defendants in Custody*

Both Blandin and Tate assert error based on an alleged observation by several jurors of the defendants in custody. The incident occurred toward the end of the trial, on November 25, 1985, when counsel for defendant Williams, the defendants, and several Marshals emerged from the courtroom while at least two jurors were standing at the elevator bank in the same hallway. When counsel for Williams, Attorney Doherty, reported the incident to the court on the next morning, he indicated that the Marshals were in the process of handcuffing the defendants at the time, but when they noticed the jurors they "ceased that, or tried to cease that particular activity, and tried to form a shield so that the jurors couldn't see." TR Vol. VII, p. 4. Although the jurors were looking in the direction of the Marshals, Attorney Doherty was not sure what, if anything, they had seen, although he did not "see how they could have missed the activity." *Id.* at 5.

In response to Attorney Doherty's motion for a mistrial, the court *sua sponte* offered to give a curative instruction to which Attorney Doherty objected. The court then denied the mistrial motion in which attorneys for Tate and Blandin then joined. In addition, Tate's attorney requested a voir dire examination of the jurors, which the court took under advisement. Appellant Blandin now asserts that the court should have granted his motion for a mistrial; appellant Tate argues that the court was required to conduct the requested voir dire. In the alternative, Blandin asserts for the first time in this court that the trial court on its own initiative should have given a curative instruction or conducted a voir dire of the jury.

Turning first to Blandin's mistrial motion, we note that the jury's inadvertent observation outside the courtroom of a defendant in custody does not "dilute [the] presumption of innocence" so as to require a new trial unless there is a showing of actual prejudice. *United States v. Ayres*, 725 F.2d 806, 813 (1st Cir.), *cert. denied*, 469 U.S. 817, 105 S.Ct. 84, 83 L.Ed.2d 31 (1984); *Dupont v. Hall*, 555 F.2d 15, 17 (1st Cir.1977). Appellant Blandin has not made the requisite showing of prejudice to justify our granting a new trial. Instead, Blandin mistakenly relies on *Ayres* for his contention that the possibility of prejudice warrants reversal. *Ayres*, however, reflects the well-established posi-

tion of this court that accidental viewings of defendants in custody, although they are to be avoided, are not *per se* prejudicial. Our position is consistent with that taken by all circuit courts that have considered the question, and we decline to abandon it. *E.g., Allen v. Montgomery,* 728 F.2d 1409, 1414 (11th Cir.1984) (" 'a brief and fortuitous encounter of the defendant in handcuffs is not prejudicial and requires an affirmative showing of prejudice by the defendant' ") (*quoting inter alia Wright v. Texas,* 533 F.2d 185, 187 (5th Cir.1976)); *United States v. Carr,* 647 F.2d 867, 868 (8th Cir.), *cert. denied,* 454 U.S. 855, 102 S.Ct. 303, 70 L.Ed.2d 149 (1981); *United States v. Robinson,* 645 F.2d 616, 617 (8th Cir.), *cert. denied,* 454 U.S. 875, 102 S.Ct. 351, 70 L.Ed.2d 182 (1981); *United States v. Diecidue,* 603 F.2d 535, 549–50 (5th Cir. 1979), *cert. denied,* 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 781, 446 U.S. 912, 100 S.Ct. 1842, 64 L.Ed.2d 266 (1980); *United States v. Taylor,* 562 F.2d 1345, 1359 (2d Cir.) ("not so inherently prejudicial as to require a mistrial"), *cert. denied,* 432 U.S. 909, 97 S.Ct. 2958, 53 L.Ed.2d 1083 (1977); *United States v. Jackson,* 549 F.2d 517, 527 n. 9 (8th Cir.), *cert. denied,* 430 U.S. 985, 97 S.Ct. 1682, 52 L.Ed.2d 379, 431 U.S. 923, 97 S.Ct. 2195, 53 L.Ed.2d 236, 431 U.S. 968, 97 S.Ct. 2928, 53 L.Ed.2d 1064 (1977); *United States v. Shaver,* 511 F.2d 933, 935 (4th Cir.1975) ("The 'brief sighting' of an accused in handcuffs is not *per se* prejudicial."); *United States v. Crane,* 499 F.2d 1385, 1389 (6th Cir.) *cert. denied,* 419 U.S. 1002, 95 S.Ct. 322, 42 L.Ed.2d 278 (1974) (*citing Kennedy v. Cardwell,* 487 F.2d 101, 109 (6th Cir.1973), *cert. denied,* 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974) ("The majority of cases, if read literally, state that such a brief and fortuitous incident is not prejudicial and requires an affirmative showing of prejudice by the defendant.") (dictum)); *United States v. Hopkins,* 486 F.2d 360, 362–63 (9th Cir.1973) (per curiam); *Glass v. United States,* 351 F.2d 678, 681 (10th Cir.1965); *Hardin v. United States,* 324 F.2d 553, 554 (5th Cir. 1963); *Way v. United States,* 285 F.2d 253, 254 (10th Cir.1960).

 Appellant Tate, on the other hand, had attempted to make a showing of actual prejudice by requesting a voir dire of the jury. The record before us, however, reveals no ruling on this request, nor does it reveal any further request for a ruling nor any objection by Tate to the absence of a ruling.[6] Consequently, the issue is not properly before us on appeal. We review, therefore, under the plain error standard, Fed.R.Crim.P. 52(b), discussed *supra.* The court's failure to conduct the requested voir dire does not fall within the definition of plain error.

We have previously stated our preferences for remedial action after an accidental observation of a defendant in custody. In *O'Shea v. United States,* 400 F.2d 78 (1st Cir.1968), *cert. denied,* 393 U.S. 1069, 89 S.Ct. 726, 21 L.Ed.2d 712 (1969), we noted that we preferred the court to make some inquiry regarding the possibility of prejudice. *Id.* at 80. In addition, in *Dupont v. Hall,* 555 F.2d 15 (1st Cir.1977), we said that the alleged observation should be brought to the attention of the court, that an *ex parte* interview of the court officers after the trial was completed was not the best method of inquiry, and that we preferred that the court give a curative instruction in these situations.[7] *Id.* at 17

---

6. Appellant Blandin's brief indicates that the court below denied Tate's motion for a voir dire of the jurors, citing "VII Tr. 64." Brief for Appellant Blandin at 48. Appellant Tate's brief indicates that the court's failure to conduct the voir dire was "tantamount to a refusal." Brief for Appellant Tate at 8. The government's brief indicates that "[t]he district court did not rule on [the voir dire] motion.... The court never ruled on the request during the trial or thereafter, and appellant Tate did not seek a ruling on the subject. Because inquiry was not made of the jurors, the government will assume that the motion was denied." Brief for Appellee at 16. Our review of the record reveals no ruling on Tate's motion.

7. The trial court in the present case offered to give just such an instruction but encountered objection from counsel for defendant Williams. In addition, the court noted that jurors are given a general instruction to draw no inferences from observing that any particular defendant is in custody. TR Vol. VII, p. 6–7. The record

(*citing United States v. Larkin*, 417 F.2d 617 (1st Cir.1969), *cert. denied*, 397 U.S. 1027, 90 S.Ct. 1271, 25 L.Ed.2d 536 (1970)). In neither case, however, did we require any specific remedial action following such an accidental observation. Instead, we have allowed the trial court broad discretion to determine the nature and extent of any inquiry into juror bias. *United States v. Corbin*, 590 F.2d 398, 400 (1st Cir.1979). Nevertheless, we reiterated in *Corbin* our preference that some inquiry be made: "When a *non-frivolous* suggestion is made that a jury may be biased or tainted, the district court must undertake an adequate inquiry into whether the alleged tainting incident occurred and whether it was prejudicial." *Id.* (emphasis added).[8]

In the present case, defense counsel told the court that two jurors *might* have observed the defendants in custody. Thus, the first task facing the trial court was to determine whether any observation had in fact taken place. Only if the court had determined that there had been an observation would the court have been required to determine whether it was prejudicial and to develop an adequate record for review. Based on the tentative nature of the allegation in the report before it, the court may well have concluded that the allegation was frivolous and thus did not require further inquiry. *See Kennedy v. Cardwell*, 487 F.2d at 109 (noting that claims of prejudice resulting from brief sightings are "often characterized ... by the courts [as] frivolous") (citations omitted). In addition, as the government suggests, the court may have been reluctant to voir dire the jury because a voir dire may have exacerbated the situation. *See, e.g., United States v. Taylor*, 562 F.2d at 1359–60 (trial court not

required *sua sponte* to voir dire the jury regarding possible prejudice from observing the defendants in custody where "voir dire might only have exacerbated the situation by making the questioned jurors more aware, or perhaps aware for the first time, that some defendants were in custody"); *see also Corbin*, 590 F.2d at 401 ("since it was not clear that the statement had been made or heard by anyone, more harm than good might have resulted from questioning each juror").

It is not our task, however, to presuppose the trial court's reasons for its failure to grant Tate's motion or its apparent failure to take other action. Tate had the burden of establishing prejudice from the accidental viewing. He has failed to pursue his request for a voir dire, which could have been done even post-verdict, and consequently has failed to develop the record necessary to meet that burden. In the absence of an adequate record, we cannot find that Attorney Doherty's report to the court supports a finding that any observation, much less a prejudicial observation, of the defendants occurred. Consequently, the court's failure to voir dire the jury does not rise to the level of plain error. *See Hardin v. United States*, 324 F.2d 553, 554 (5th Cir.1963) (where offer to give cautionary instruction was refused and appellant did not pursue requested voir dire, it was not error to deny motion for mistrial); *see also United States v. Wilkerson*, 453 F.2d 657, 661 (8th Cir.1971) (counsel, who had burden of proof, failed to establish that an actual sighting had occurred), *cert. denied*, 405 U.S. 1071, 92 S.Ct. 1521, 31 L.Ed.2d 804 (1972); *Yates v. United States*, 362 F.2d 578, 579 (10th Cir.1966) (denial of motion

---

before us does not reveal that the latter instruction was actually given in this case; it clearly was not given with the instructions at the close of the trial. The government indicates that the instruction is usually given when the jury is impaneled. Without a record of its being given, however, we do not assume it was.

**8.** *Corbin* involved a report to the trial court that one juror had prejudged the guilt of the defendant, as evidenced by that juror's *sotto voce* statements while the jury was being impaneled. The

court responded to the allegation of taint by questioning the juror and those who sat near him. Although the court found no evidence of taint, it nevertheless dismissed the juror who allegedly had made the comments but permitted the trial to continue. We found the court's actions to be reasonable in light of its findings. 590 F.2d at 400–01. *Corbin* is thus distinguishable from the present case. A juror's verbalizations of prejudgment are clearly a nonfrivolous suggestion of bias.

for mistrial upheld where no evidence established that any juror had in fact observed the defendant in custody).

■ We also reject Blandin's contention that the court on its own initiative should have conducted a voir dire or given a curative instruction. Again, because Blandin raises these issues for the first time on appeal, we limit our review of the court's action to plain error. In the absence of a showing of actual prejudice, the court's failure to act does not constitute plain error.

### C. Failure to Give Requested Jury Instructions

We turn now to Williams's allegations that the trial court erred when it failed, over timely objection, to give three jury instructions requested by Williams. We begin by reiterating the standard applied by this court to alleged errors in jury instructions. "The refusal to give a particular requested instruction ... is reversible error only if 'the instruction (1) is substantively correct; (2) was not substantially covered in the charge actually delivered to the jury; and (3) concerns an important point in the trial so that the failure to give it seriously impaired the defendant's ability to effectively present a given defense.'" *United States v. Gibson*, 726 F.2d 869, 874 (1st Cir.), *cert. denied*, 466 U.S. 960, 104 S.Ct. 2174, 80 L.Ed.2d 557 (1984) (*quoting United States v. Grissom*, 645 F.2d 461, 464 (5th Cir.1981)). With this standard in mind, we now consider each of the instructions requested by Williams.

■ Williams first claims that the nature of the Capsule Boys organization mandated that a special conspiracy instruction be given. Specifically, Williams requested that the government's burden of proof include proof that each defendant knew the details of the conspiracy and believed that his own benefits depended on the success

of the venture. Williams relies on *United States v. Perry*, 550 F.2d 524 (9th Cir.), *cert. denied*, 431 U.S. 918, 97 S.Ct. 2182, 53 L.Ed.2d 228, 434 U.S. 827, 98 S.Ct. 104, 54 L.Ed.2d 85, *reh'g denied*, 434 U.S. 976, 98 S.Ct. 536, 54 L.Ed.2d 469 (1977), for his point.

■ *Perry*, however, is of no help to Williams. In *Perry*, the Ninth Circuit affirmed the trial court's refusal to give a conspiracy instruction that incorrectly stated the law of conspiracy. Williams's challenge fails for the same reason. Proof that a defendant knew the details of the conspiracy is not required to prove conspiracy. Instead, we require proof only that the defendant knew the "essential features and general aims" of the venture. *United States v. Stubbert*, 655 F.2d 453, 456 (1st Cir.1981) (*citing Blumenthal v. United States*, 332 U.S. 539, 556–57, 68 S.Ct. 248, 256, 92 L.Ed. 154 (1947)). Similarly, the requested instruction was overly broad regarding a defendant's belief that his benefits depended on the success of the venture. Where the existence of co-conspirators is unknown to others at a lower level of a conspiracy, a defendant's agreement to the conspiracy can be inferred if the defendant *has reason to know* that others are involved at his level of distribution and has reason to believe that his benefits are *probably* dependent on the success of the entire venture. *United States v. Barnes*, 604 F.2d 121, 155 (2nd Cir.1979), *cert. denied*, 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 260 (1980). This is not the instruction requested by Williams. Because the requested instruction was not substantively correct, the trial court did not err in refusing to give it.

■ Williams next contends that the court erred by failing to give a special instruction regarding witnesses who are substance abusers.[9] In support of his contention, Williams cites *United States v.*

9. Williams requested the following instruction: Witnesses who testify that they had or have serious behavioral problems as a direct result of the abuse of heroin and/or cocaine are often erratic and unreliable. In determining their credibility you are entitled and you should consider what effect their substance abuse and/or addiction has on what they have said and how they say it.

*Marshall,* 513 F.2d 274 (5th Cir.1975), *cert. denied,* 423 U.S. 1048, 96 S.Ct. 773, 46 L.Ed.2d 636, 423 U.S. 1079, 96 S.Ct. 867, 47 L.Ed.2d 90 (1976). *Marshall,* however, sets forth a three-part test that the Fifth Circuit used in that case to uphold the lower court's refusal to give a special instruction regarding the credibility of addict-informants. We find no reason to apply the *Marshall* test because it is not fundamentally different from our basic test as stated in *Gibson, supra.*[10]

The government would have us analyze the requested instruction by applying a standard developed in a series of "addict-informant" cases. *See, e.g., United States v. Hoppe,* 645 F.2d 630, 633 (8th Cir.), *cert. denied,* 454 U.S. 849, 102 S.Ct. 170, 70 L.Ed.2d 138 (1981); *United States v. Tousant,* 619 F.2d 810, 812 (9th Cir.1980); *United States v. Cook,* 608 F.2d 1175, 1182 (9th Cir.1979), *cert. denied,* 444 U.S. 1034, 100 S.Ct. 706, 62 L.Ed.2d 670 (1980); *United States v. Wright,* 542 F.2d 975, 988–89 (7th Cir.1976), *cert. denied,* 429 U.S. 1073, 97 S.Ct. 810, 50 L.Ed.2d 790 (1977); *United States v. Gregorio,* 497 F.2d 1253, 1261–63 (4th Cir.), *cert. denied,* 419 U.S. 1024, 95 S.Ct. 501, 42 L.Ed.2d 298 (1974); *Virgin Islands v. Hendricks,* 476 F.2d 776, 778–79 (3d Cir.1973); *United States v. Collins,* 472 F.2d 1017, 1018–19 (5th Cir.1972), *cert. denied,* 411 U.S. 983, 93 S.Ct. 2278, 36 L.Ed.2d 960 (1973); *United States v. Kin-*

*nard,* 465 F.2d 566, 571–72 (D.C.Cir.1972). The essence of these cases is that, under certain circumstances, a defendant may be entitled to a special instruction regarding the peculiar proclivity toward untruthfulness of the government informant who is also a narcotics addict. The basis for the instruction is the incentive for mendacity provided by the addict's interest in avoiding incarceration so that he or she may continue to obtain drugs. *United States v. Rosa,* 705 F.2d 1375, 1381 (1st Cir.1983).

It is not clear from the record before us that Williams had requested this particular type of specialized instruction. Instead, Williams appears to have requested a generalized instruction regarding the credibility of persons who use or abuse narcotics. Even those courts that may require the specialized addict-informant instruction have refused to apply the same rationale to the testimony of all drug addicts. *United States v. Kinnard,* 465 F.2d at 571–72 (*citing inter alia Godfrey v. United States,* 353 F.2d 456, 458 (D.C.Cir.1966)). Even if we were to construe Williams's request as a request for the special addict-informant instruction discussed by the above cases, we do not read these cases as stating a *per se* rule for giving the instruction. Instead, the courts that have addressed this question apply various tests that are similar in effect to our test in *Gibson.*[11]

**10.** The court in *Marshall* noted the following determinative factors when it found no necessity for the instruction. One, the requested instruction that "a drug addict is inherently a perjurer" was substantively incorrect. *Marshall,* 513 F.2d at 277. Two, the trial court had given a general instruction regarding the greater care necessary in weighing testimony of informers who testify for pay or immunity. *Id.* n. 3. Finally, the testimony was substantially corroborated. *Id.* at 277. These three points parallel our test in *Gibson,* the first two being nearly identical. The *Marshall* court's point regarding corroboration of testimony parallels the *Gibson* test requirement regarding the significance of the issue to the defense. Only if there were no other corroborating evidence would the witness's status as a narcotics addict become central to the determination of guilt.

**11.** The rule for giving the instruction traces its origin to *United States v. Kinnard,* 465 F.2d 566

(D.C.Cir.1972). In *Kinnard,* the trial court did not allow one defendant to elicit a government narcotics agent's opinion regarding the general reliability and truthfulness of narcotics addicts. *Id.* at 569. Nor did the court give a requested instruction regarding the reliability of their testimony. *Id.* In Chief Judge Bazelon's separate opinion, he indicated that he would hold that the trial court both must permit the defendant to develop extrinsic evidence regarding an informer's addiction and "must provide an explicit cautionary instruction on the unreliability of paid informers who are also drug addicts." *Id.* The concurrence, however, limited the necessity for the instruction to instances in which the addict-informant's testimony is not corroborated. *Id.* at 577 (Leventhal, J., *concurring*). The dissent would have mandated neither the inquiry nor the instruction. *Id.* at 580–83 (Adams, J., *dissenting*). Consequently, the *per se* rule appears to be merely Chief Judge Bazelon's minority position. *See United States v. Wright,*

In applying the *Gibson* test to the instruction requested by Williams, we find no error. First, the instruction requested by Williams was overbroad in that it impugned the testimony of all addicts. Second, the trial court gave general credibility instructions. In addition, the court gave a detailed accomplice-witness instruction as required by our decision in *United States v. Dailey,* 759 F.2d 192, 200 & n. 8 (1st Cir. 1985). Thus, the trial court substantially covered Williams's point in the actual charge. Finally, Williams was permitted to develop, through the expert testimony of two DEA agents, his theory regarding the unreliability of substance abusers. Moreover, because those witnesses who testified to drug use were corroborated by witnesses who were not drug users, the record before us does not support the claim that the failure to give the requested instruction seriously impaired Williams's ability to present his defense.

■ Williams's final challenge to the jury instructions concerns his request for a special credibility instruction.[12] The trial court gave a general instruction regarding credibility which substantially covered Williams's point. Consequently, it was not error for the court to refuse to give the precise instruction requested by Williams.

### D. *Severance*

■ Blandin also appeals the trial court's denial of his motion for severance. We review the trial court's decision for abuse of discretion. *United States v. Mazza,* 792 F.2d 1210, 1225 (1st Cir.1986). In order to prevail on appeal, Blandin must make a strong showing of prejudice. *United States v. Cox,* 752 F.2d 741, 746 (1st Cir.1985). He must show either that the joint trial " 'deprived [him] of a fair trial' or

'result[ed] in a miscarriage of justice.' " *Mazza,* 792 F.2d at 1225 (*quoting United States v. Albert,* 773 F.2d 386, 388 (1st Cir.1985)). Blandin bases his appeal on two separate arguments, which we consider in turn.

First, Blandin argues that the traditional rule that allows joinder absent a showing of actual prejudice should be abrogated. We disagree. Blandin has offered no persuasive reason why the rule should not be applied, and we decline to abandon it.

■ Blandin's second argument is that joinder in this case was prejudicial because there was both insufficient evidence upon which to convict him and insufficient jury instructions to cure any prejudice that may have resulted from the potential spillover of evidence among defendants. Blandin's insufficiency of the evidence contention is based on the government's failure to connect him with those aspects of the conspiracy that transpired outside the Boston area. Of course, the government need not have proven that Blandin was involved in all aspects of the conspiracy in order to prove that he in fact joined the conspiracy. *See United States v. Stubbert,* 655 F.2d 453, 456 (1st Cir.1981).

■ Blandin's contention about the jury instructions is equally ill-founded. The court gave clear and complete limiting instructions. These careful instructions adequately eliminated the possible prejudicial spillover of evidence as to Blandin. *United States v. Porter,* 764 F.2d 1, 13 (1st Cir. 1985). Blandin also relies on the fact that the jury found all three defendants guilty as evidence of prejudice. Although a verdict that differentiates among defendants or counts is evidence of a lack of spillover prejudice, *United States v. Drougas,* 748 F.2d 8, 19 (1st Cir.1984), a unanimous ver-

542 F.2d at 988–89 (discussing the scope of *Kinnard* and subsequent cases).

Subsequent cases have limited the application of *Kinnard* by creating further exceptions to the need for an addict-informant instruction. These exceptions are summarized in *United States v. Hoppe, supra.* They include: "a dispute as to whether the informant is actually an addict; cross-examination concerning the informant's addiction; an instruction alerting the

jury that an informant's testimony should be viewed with care; and corroboration of the informant's testimony." *Hoppe,* 645 F.2d at 633 (citations omitted). We find that these exceptions comport fully with our test in *Gibson.*

12. Williams requested the following instruction: "Witnesses sometimes lie in court even though they have taken an oath to tell the truth."

dict, without more, is not evidence of strong prejudice. *See United States v. Turkette*, 656 F.2d 5, 9 (1st Cir.1981). Consequently, we find no abuse of discretion in the trial court's refusal to grant a severance as to Blandin.

### E. *Admissibility of Certain Evidence*

#### 1. *Petrozziello Ruling*

Appellant Blandin argues that the court erred in making its *Petrozziello* ruling. We review a *Petrozziello* ruling under the clearly erroneous standard. *United States v. Patterson*, 644 F.2d 890, 894 (1st Cir. 1981). We conclude that the court committed no clear error.

■■■■■ Before certain out-of-court declarations made by co-conspirators could have been admitted against Blandin, *Petrozziello* and its progeny required the trial court to find, by a preponderance of the evidence standard, that a conspiracy existed, that Blandin became a member of the conspiracy, and that the declarations were made in furtherance of the conspiracy. *United States v. Ciampaglia*, 628 F.2d 632, 638 (1st Cir.), *cert. denied*, 449 U.S. 956, 101 S.Ct. 365, 66 L.Ed.2d 221, 449 U.S. 1038, 101 S.Ct. 618, 66 L.Ed.2d 501 (1980). The trial court made this ruling at the close of all the evidence. Blandin argues that there was insufficient evidence to establish that he was a part of the conspiracy.[13] Blandin bases his argument on what he perceives to be the lack of credibility of the witnesses who testified against him. Evaluation of their credibility, however, is within the province of the trial court for purposes of the motion. Our review reveals no basis for totally discounting the testimo-

ny of those witnesses who linked Blandin to the conspiracy, most of whom were co-conspirators but several of whom were law enforcement officers. We will not, therefore, upset the court's credibility findings. In light of Blandin's challenges, we cannot say the trial court's ruling was clearly erroneous.

#### 2. *Chain of Custody*

■■■ Blandin challenges the admission of several items of physical evidence, all of which were narcotic substances, on the ground that the government failed to establish a complete chain of custody for them. There is no dispute regarding the relevant testimony. The testimony established that the detective who seized the items turned them over to a detective-sergeant who in turn delivered them to an evidence technician at the state laboratory. Consistent with the laboratory's custom and practice, the technician sealed the items in a plastic bag and placed them in a safe. Thereafter, a chemist analyzed the substances, initialed the contents, and resealed them in a glassine bag that he identified at trial and that was admitted in evidence. Blandin's claim of error rests on the failure of either the evidence technician to testify or the government to present documentary evidence of the chain of custody between the technician and the chemist.

The legal question as to whether this evidence was admissible was a preliminary issue for the trial court. In order to find the evidence admissible, the court must conclude that it was reasonably probable that the evidence had not been altered since the occurrence of the crime. We

---

**13.** Blandin apparently argues that the *Petrozziello* ruling admitted not only the out-of-court declarations it was designed to govern but also resulted in the trial court admitting "all of the Government's testimonial and physical evidence against all three defendants." Brief for Appellant Blandin at 41. Of course, it has long been permissible to admit, against all co-conspirators, all evidence that serves to establish the *existence* of the conspiracy. Only evidence showing participation in the conspiracy must be individualized, *See, e.g., Gardiner v. United States*, 321 F.2d 159, 161 (5th Cir.), *cert. denied*, 375 U.S. 953, 84 S.Ct. 445, 11 L.Ed.2d 314 (1963). Blan-

din does not argue that the court should have applied a standard other than *Petrozziello* to this determination, and we offer no opinion thereon.

Appellant Williams also argues that the court committed error when it admitted any evidence against him under the conspiracy exception since a reasonable jury could not have found that Williams was a member of the conspiracy. Because Williams's argument also attacks the credibility of those witnesses who testified against him, we decline to overrule the trial court's sound judgment in this area.

review the court's determination for an abuse of discretion. *United States v. Luna*, 585 F.2d 1, 6 (1st Cir.), *cert. denied*, 439 U.S. 852, 99 S.Ct. 160, 58 L.Ed.2d 157 (1978).

Although Blandin made a timely objection on this point at trial, he did not offer any evidence in support of his claim that the substances had been altered. He was, of course, free to argue to the jury that they could accord less weight to this evidence because of the chain of custody proven by the government. This, however, is a different issue from the admissibility of the evidence. We find no abuse of discretion in the trial court's decision to admit this evidence and therefore leave its ruling undisturbed.

In conclusion, none of the appellants' arguments merit reversal of their convictions. Accordingly, the convictions of appellants Williams, Blandin, and Tate are hereby *affirmed*.